FOSTER M. FERRIN, Respondent, *v.* ALBERT G. MYRICK, Administrator of SANFORD HARTMAN, deceased, Appellant.

An administrator, personally, and not the estate, is liable for all contracts made by him for the funeral expenses of the deceased.

And, in case of his death or removal after such contract, and the appointment of a new administrator in his place, no action against the latter, as representing the estate, can be maintained thereon.

Accordingly, where an administrator, having made a contract with the plaintiff, engaging him to furnish gravestones for the grave of the intestate, was subsequently removed, and the defendant appointed administrator in his place,—*Held*, on demurrer to a complaint, alleging the contract of the defendant's predecessor for the gravestones, their construction by plaintiff, his readiness to deliver them, and sufficient assets in the hands of the defendant; that it did not state facts sufficient to constitute a cause of action, and the demurrer must be sustained. (MURRAY and MASON, JJ., *contra*.)

*It seems*, that in all causes of action arising upon contracts made by executors or administrators, the claim is against the executor or administrator personally, and not against the estate, and the judgment must be *de bonis propriis ;* and such causes of action cannot be united with causes of action arising upon the contract of the deceased. (HUNT, Ch. J.)

(Cause submitted September 29th, 1869, and decided December 21st, 1869.)

APPEAL from a judgment of the General Term of the Supreme Court in the fifth district, reversing a judgment at Special Term (MULLIN, J.), sustaining a demurrer to the complaint.

This action is brought to recover the price of gravestones agreed to be furnished by plaintiff at the request, in his official capacity, of the predecessor of defendant.

The defendant demurred to plaintiff's complaint. At Special Term the demurrer was sustained. The plaintiff appealed from the order of the Special Term to the General Term, where the order was reversed and judgment thereon entered for plaintiff. The defendant now appeals to this court from the judgment.

The following are the allegations of the complaint:

" On the 6th day of March, 1865, Jacob Hartman was duly appointed administrator of the estate of Sanford Hartman, late of Monroe county, deceased, by the surrogate of said county of Monroe, who had jurisdiction for that purpose.

" Said Jacob thereupon entered upon the duties of said office, and continued such administrator until on or about the 29th day of December, 1866, when he was duly removed from his office by the surrogate, and the defendant, Albert G. Myrick, appointed in his place and stead; and said Albert is now such administrator.

" On or about the 1st day of May, 1865, the said Jacob, as such administrator, made and entered into a contract with plaintiff, in and by which the said plaintiff agreed to manufacture and sell to said administrator a set of gravestones for the agreed price of $140, the same to be completed and ready to deliver to said administrator at the shop of said plaintiff, in Watertown, in said county of Jefferson, on the 1st of Sep-

tember, 1865, and said administrator agreed to purchase and receive the same and pay therefor the said price at said time.

"The said gravestones were purchased by said administrator to be placed at the grave of said deceased, and were suitable to the rank and station in life of said deceased, and to the circumstances of his estate, and were reasonable.

"The plaintiff thereupon, in pursuance of said contract, made and completed said gravestones, and was ready to deliver the same at the time and place aforesaid. But the said Jacob, as well as the defendant, have neglected and refused to receive or pay for the same, except that the said Jacob, as such administrator, paid thereon the sum of forty dollars, on the 4th day of February, 1866. And the said plaintiff, ever since said 1st September, 1865, has been, and still is ready and willing, and has offered to deliver said stones at the place aforesaid.

"The said defendant has in his hands assets belonging to said estate, applicable to and more than sufficient for the payment of plaintiff's claim, and there is now justly due the plaintiff from said estate the sum of $104.08, and interest from February 4, 1866; wherefore the plaintiff demands judgment against the said defendant, as such administrator, for the sum of $104.08, and interest from February 4, 1866, with the costs of this action."

*H. H. Woodward*, for appellant, cited, *Beach* v. *King* (17 Wend., 197); *White* v. *Jay* (13 N. Y., 83, 86); *Wheeler* v. *Dakin* (12 How., 541); *Hall* v. *Folbert* (8 How., 428); *Meyer* v. *Nevin* (12 J. R., 349); *Demer* v. *Field* (7 Cow., 58); *Ingwell* v. *Hegman* (3 Camp. 298); *Corner* v. *Shew* (3 M. & W., 350 and notes); *Rogers* v. *Price*, ex'rs (3 You. & Jer., 28); *Gillett* v. *Hutchinson* (24 Wend., 184); *Shelley's Case*, 1 Salk., 296; *Hancock* v. *Podmore* (1 Barn. & Adol., 260); Dayton's Surrogate, 285; Wms. Ex'ors., 831.

*M. H. Merwin*, for respondent, cited, *Hapgood* v. *Houghton* (10 Pick., 154); *Matter of Thompson*, 41 Barb., 237; *Choteau* v. *Snyder* (21 N. Y., 179); *Howard* v. *Powers* (6

Ohio, 92); *Parker* v. *Lewis* (2 Duer, 21); *Rogers* v. *Price* ex'rs (3 Young & Jervis, 28); *Chaffie* v. *Cooper* (13 M. & W., 252); *Noyes* v. *Blakeman* (2 Seld. 567); *Camden* v. *Fletcher* (4 M. & W., 378); *Parker* v. *Gainer* (17 Wend., 559); *Allen* v. *Bishop* (25 W., 415); *Dow* v. *Bockenstone* (12 Wend., 543); *Butler* v. *Hempstead* (18 Wend., 666.

HUNT, Ch. J. It is provided by the statute of this State, that all lawful acts done by administrators who may be removed or superseded, shall remain valid, and shall not be impeached by any subsequent revocation of the authority of such administrator. (2 R. S., 79 m., § 47.) The plaintiff's claim stands, therefore, as if Jacob Hartman had continued to be administrator of Sanford Hartman, and the action had been brought against him as administrator.

The contract for the gravestones was proved to have been made. They were of a character suitable to the rank and station in life of the deceased, and to the circumstances of his estate. The defendant, as administrator, had assets in his hands applicable to their payment. Can the action in such case be maintained against the estate, as a matter of course, or is the remedy against the administrator personally? The administrator contracted for the purchase and delivery of the monument. He had a right to contract for stones suitable to the rank in life of the deceased, and to the estate left by him. He had no right to contract for stones of an unsuitable character. Thus, for the grave of a man leaving an estate of $10,000, or $20,000, monuments of which the expense should be $100 or $200, would very likely be deemed suitable and reasonable. If the same individual should leave an estate of but $500, and a family of small children, an expenditure of several hundred dollars for that purpose, probably would not be deemed suitable or reasonable. (*Hancock* v. *Podmore*, 1 B. & Ad., 260 ; 20 Eng. C. L. R.) Whether the particular article is suitable and reasonable, or otherwise, is a question which the seller is not called upon to decide. That question is not left to his decision. It belongs to the administrator. He decides

it at his peril, to be allowed or disallowed, in the final settlement of his accounts with the surrogate. The seller accepts the judgment and decision of the administrator, acts upon his direction, and makes and delivers the stones or the monument upon his direction and upon his agreement. It is, therefore, most reasonable and proper, that the administrator should be liable himself to the seller, although the estate may not ultimately be liable to him, or to any one else, for the article furnished.

Again, it is to be considered, that the administrator is not the agent of the testator, or of the estate, and therefore allowed to contract in its behalf. We are apt to look upon an administrator as holding a like position to that held by a railroad manager, or a bank president. The latter officer orders and receives at the bank a set of ledgers, with the name of the bank entered in the same. A railroad manager, orders and receives a quantity of rails, which are delivered and laid down upon the track of his company. In each of these cases, it would be quite proper for the jury to find that the purchase was made for the corporation, and not by the officer individually. Not so, however, with the administrator. He has the title to the personal estate. He has no principal behind him for whom he can contract as agent. This is the policy of the law. The estate in the personalty is given, by the law, directly to the administrator. For the purpose of use and sale the title vests in him, and he is held responsible as owner. (1 Wms. Exrs., 530, 539, 546.) As owner, he must account to the persons ultimately entitled to distribution; and as owner, he sells, disposes and contracts, as his judgment dictates. These considerations fix the liability for the debt in question, upon the administrators personally, and not upon the estate. So are the authorities. In *Myer* v. *Cole* (12 John. R., 349), the declaration contained three counts. The first for goods sold by the plaintiff's testator to the defendant's testatrix, in their lifetime respectively. The second was for work and labor and the promise, laid as in the first count. The third stated, that the defend-

ants, as executors aforesaid, were indebted to the plaintiff's testator, in his lifetime, for work and labor at the funeral of the testatrix; and being so indebted, the defendants, as executors as aforesaid, undertook and promised to pay the testator in his lifetime. To this declaration there was a demurrer, and judgment was rendered for the defendants. The court say: "The declaration is clearly bad. The cause of action, stated in the last count, arose after the death of the testatrix, and could not be joined with a cause of action arising in her lifetime. It would require different judgments." In *Demott* v. *Field's*, administrator (7 Cowen R., 58), the declaration contained four counts; the first two in assumpsit on promises of the intestate; the last two on promises of the defendant as administrator, to pay for funeral expenses of the intestate. The cause was referred; a general report was made in favor of the plaintiff without distinguishing upon which set of counts, whether that upon promises of the intestate or of the defendants. A motion being made in arrest of judgment, the court say, "the case of *Meyer* v. *Cole* is in point for the motion. The different set of counts, two being on promises of the intestate, and two on those of the defendants, for a consideration arising after the death of the intestate, require different judgments, the first *de bonis intestatoris*, the last *de bonis propriis*. And though the estate of the intestate in the defendants' hands, would be liable over, to the satisfaction of the claim for funeral expenses, that does not alter the form of the proceedings. The defendant would be liable upon the promise charged upon him, whether he has property of the intestate to answer it or not." The judgment was arrested. In *Gillet* v. *Hutchinson's* adm's (24 Wend. R., 184), the plaintiff declared on a promissory note, made by Dyget to the order of the intestate, and by him indorsed in his lifetime, averring demand and notice of non-payment. The second count was like the first, omitting the averment of notice. The third was for money lent by the plaintiff to the defendants as administrators. The fourth for money paid to, for the use of the defendants as administrator. The fifth

for money had and received by the defendant as administrators, to and for the use of the plaintiff. The sixth, for that the defendants, as administrators, accounted with the defendants for divers sums due, and owing from the defendants, as administrators as aforesaid. To this complaint there was a demurrer and a joinder. By the court, BRONSON, J., "Independent of minor objections, there is a fatal misjoinder of counts. The two first counts are upon promises made by the intestate in his lifetime, though the right of action did not accrue until after his death. On these counts the judgment would be *de bonis intestatoris*. Although a promise by the administrator is alleged, the counts show that the original obligation was contracted by the intestate. (*Carter* v. *Phelps*, 8 J. R., 440.) The four remaining counts are on promises made by the administrators, and relate wholly to transactions after the death of the intestate. On these counts the judgment would be *de bonis propriis*. (*Rose* v. *Bouler*, 1 H. Bl., 108; *Brigden* v. *Parkes*, 2 B. & P., 424; *Powell* v. *Graham*, 7 Taunt., 580; *Jennings* v. *Newman*, 4 T. R., 347; 2 *Saunders*, 117 e, note; *Meyer* v. *Cole*, 12 J. R., 349; *De mott* v. *Field*, 7 Cow., 58.) The count upon the account stated might have been joined with the two first counts, if the accounting had been of moneys, due from the intestate in his lifetime, but it is of moneys due from the administrators. (*Reynolds* v. *Reynolds*, 3 Wend., 244.) The case of *Powell* v. *Graham* (7 Taunt., 580), so far as it relates to the *insimul computassent* count, is not law in this State, if it is in England." Judgment was ordered for the defendants.

In the case of *Reynolds* v. *Reynolds* (3 Wend., 244) above cited, the rule is thus laid down by SAVAGE, Ch. J.: " The only question, therefore, is whether the last count charges a personal liability, and whether a recovery upon it requires a judgment in his representative or individual capacity. The count appears to be taken from 2 Ch. Pl., 61-2, and states that the defendant, as administrator as aforesaid, accounted with the plaintiff concerning divers sums of money, due and owing from the defendant, as administrator as aforesaid, and that

after such accounting the defendant, as such administrator as aforesaid, was found in arrears, and as administrator as aforesaid promised to pay. Had the count stated the accounting to be *of and concerning divers sums of money due and owing from the intestate in his lifetime to the plaintiff*, it would have fallen precisely within the case of *Secor* v. *Atchinson* (1 H. Bl., 102), in which such a count was held to be properly joined with other counts stating promises by the intestate. The distinction is between causes of action existing in the lifetime and those arising after the death of the testator or intestate. In the former cases, the judgment should be against the goods of the deceased; in the latter, against the goods of the representative." The learned judge proceeds to discuss further the cases in this State and in the English courts.

The cases of *Chouteau* v. *Suydam* (21 N. Y. R., 180), and *Noyes* v. *Blakeman* (2 Seld., 578), do not present the precise questions before us, although in them are discussed principles of the same general character. It can hardly be said that they impair the force of the cases cited, as none of them are considered by the learned judge who writes the opinion in *Chouteau* v. *Suydam ;* and the case of *Noyes* v. *Blakeman* was quite different in all its aspects. No other cases have been decided in the courts of this State that bear upon this point, so far as my examination has extended. The following principles are settled by these authorities:

1. That for all causes of action arising upon a contract made by the testator in his lifetime, an action can be sustained against the executor as such, and the judgment would be *de bonis intestatoris.*

2. That in all causes of action, where the same arises upon a contract made after the death of the testator, the claim is against the executor, personally, not against the estate, and the judgment must be *de bonis propriis.*

3. That these different causes of action cannot be united in the same complaint.

The English authorities upon this question are not so clear or so consistent with each other as those of this State.

In respect to the non-liability of the estate, for contracts made by the executor after the death of his testator, the learned Judge WILLIAMS, in his work on executors, gives the rule substantially as I have deduced it from our authorities. He says : " It seems to have been once considered, that wherever an action was brought against an executor, on promises laid to have been made after the death of the testator, he was chargeable in his own right, not in his representative capacity." (2 Wms. Exrs., 1507, citing Cro. Eliz., 91 ; Cowp. 289, 4 T. R., 348.) He adds that the modern authorities have established that in several instances, the executor may be sued *as executor* on a promise made by him as executor, and that a declaration founded on such promise will charge the defendant no further than a declaration on a promise of the testator. He then cites *Dowse* v. *Cox* (6 B. & C., 255), where Biddle, who had submitted to arbitration died before award made (it having been agreed that death should not abate the reference), the arbitrator awarded that the executor should pay £225 out of the estate of Biddle; and that being so liable, the defendant, as executor, promised to pay. The court held that the judgment must be *de bonis testatoris*. The action and the judgment being upon a cause arising in the testator's lifetime, the action could not be defeated by the defendant's personal promise to pay. The judgment was right.

He then cites *Powell* v. *Graham* (7 Taunt., 581), which was also a case where the defendant as executor, had promised personally, but when the services had all been rendered to the testator in his lifetime. The judgment was properly *de bonis testatoris*. To this case the author appends the remark, that it makes no difference whether the account be averred to have been stated of money due from the testator to the plaintiff, or of money due from the defendant as executor. To sustain this statement, the case of *Powell* v. *Graham, supra*, is cited. This case does not justify the remark, but is an authority to the contrary. It is, however, sustained by *Ashley* v. *Ashley* (7 B. & C., 444), which is cited. This case is in hostility

to the authorities of this State before cited, and to *Rose* v. *Bouler* (1 H. Bl., 108); *Jennings* v. *Newman* (4 T. R., 347); *Brigden* v. *Parkes* (2 B. & P., 426); and to 2 Saunders, 117 *a*, a note to *Coryton* v. *Lithye*, where the authorities are collected. The statement, I think, cannot be sustained.

He further says, that "it seems" that a count charging that the defendant as executor, was indebted to the plaintiff for so much money paid to him as executor, and as executor promised to pay, charges the defendant in his representative character. In its broad terms, this proposition is in hostility to the cases, but in the instance put by the author it is sound. Thus, two persons are jointly bound as sureties; one dies, and the survivor is obliged to pay the whole debt. In such case, if the deceased had been living, the survivor might have sued him for contribution in an action for money paid. The contract was made by the testator himself. The action is upon his contract, and upon principle the judgment should be *de bonis testatoris*.

The author immediately adds (p. 1509): But a count alleging that the defendant, as executor, was indebted for so much money lent to him as executor, and that as executor he promised to pay, charges him personally, and the only possible judgment is *de bonis propriis*. And so it is, he says, of a count which charges that the defendant, as executor, was indebted for money had and received, as executor, to the use of the plaintiff, and as executor promised to pay, the judgment must be *de bonis propriis;* and so of a count for use and occupation and for goods sold and delivered to the defendant, as executor, after the testator's death. (1510.)

In all these cases, the law holds the transaction necessarily to be that of the executor personally, and that the averment of a promise as executor is a *nudum pactum*. No promise, as executor, can be made, except upon a transaction having an origin before the death of the testator.

The English cases have generally held to these rules, though not with entire consistency. I refer to the most important of them, without comment. (*Corner* v. *Shew*, 3

M. & W., 350; the same, 4 id., 162, *n.*; *Ashley* v. *Ashley*, 7 B. & C., 444; 14 Eng. C. L., 77; 1 Ch. Pl., 205; *Rogers* v. *Price*, 3 Y. & J., 28; *Tugwell* v. *Heyman*, 3 Camp., 298.)

It is certainly the duty of the executor to pay the funeral expenses of the deceased from his estate, and it has been well held that suitable gravestones are a part of such expenses. (2 Wms. Ex., 871 and note; 2 Redf. on Wills, 224.) The expenses do and should fall upon the estate and not upon the executor. But it does not follow, as a logical sequence, that an action at law can be maintained against the estate to recover the amount. I have endeavored already to show why the action should not be sustained against the executor as such, and why it may be sustained against him personally. It ought to be added, that in case of the fraud or insolvency of the executor, an equitable cause of action would probably be thereby created against the estate, which could be enforced in behalf of the creditor, and which would enable him to maintain a claim against the estate directly.

The judgment of the General Term should be reversed, and the order of the Special Term affirmed with costs.

Murray, J. (dissenting.) Jacob Hartman was first appointed administrator of the estate of Sanford Hartman, deceased, and, while acting as such administrator, contracted with the respondent for the making and delivery of a gravestone for the grave of the intestate, and agreed to give him $140 therefor, and paid him forty dollars thereon.'

Jacob Hartman was removed by the surrogate, and the appellant appointed such administrator in his place. The respondent brings this action against him as such administrator for the balance of the price of the gravestones.

The appellant demurred to the complaint on the grounds, first, it did not state facts sufficient to constitute a cause of action. Second, it did not show the appellant was duly appointed such administrator. Third, it did not show the gravestones were suitable to the rank and circumstances of the

deceased. Fourth, there was no privity of contract between the parties to the action.

The main question raised by the demurrer is, that under the circumstances alleged in the complaint the action will not lie against the appellant as administrator. As alleged, the contract was made with the former administrator, and price agreed upon. If an action could be sustained against the former administrator on that contract, it can be sustained against the appellant as his successor. Thus the question is distinctly made whether an administrator can be sued as such on a contract made by him for the purchase of gravestones for the grave of his intestate so as to charge the estate. That he could be sued and charged personally cannot be questioned.

It is equally well settled that he may be sued as such administrator, and the estate charged, on a contract made with his intestate. This is a contract not made with the intestate, but with the administrator himself. The administrator had a right to make such contract. It is within the line of his duty. It is, to a reasonable amount, entitled, first, to be paid out of the assets of the estate in the hands of the administrator. There is no good reason then why he should not be sued as the representative of the estate, and the estate thereby charged. It is alleged in the complaint that the former administrator entered into the contract with respondent as *administrator,* which clearly indicates that he intended to bind himself as administrator and not personally. The respondent could not otherwise understand it. Thus the case is brought within the principles of the case of *Chouteau* v. *Suydam* (21 N. Y. R., 179), which I think must be regarded as the settled law of this State. The same principle seems to be clearly recognized in the matter of the estate of Thompson (41 Barbour, 237). There is some conflict of authorities on the question, which are collected in the able opinion of Judge MULLIN in this case at the Special Term ; but those cases that are in opposition to these views must be deemed overruled. It is urged on the part of the appellant that whether these grave-

stones were suitable and proper, under the circumstances of the estate, was for the surrogate to determine, on the final accounting and settlement of the estate, and that if the administrator can be sued and judgment rendered against him as such, and the estate thereby charged, it cuts off the power of the Surrogate to determine, and for that reason, the action should not be sustained. On this demurrer, no such question can be raised, for the reason that the complaint alleged that the gravestones were suitable to the rank and station in life of deceased, and to the circumstances of his estate, and were reasonable, which by the demurrer is admitted. The question then is stripped of every difficulty, except can an administrator, as such, be sued on a just and proper contract, made by him as representative of the estate? My conclusion is that he can. But supposing the appellant, instead of demurring, had put in an answer to the complaint, and denied the stones being suitable and proper ones, the Supreme Court has ample jurisdiction to try and determine that question. But it is said there may be creditors and next of kin interested in this question who are not parties to the action. That is true; but it is the duty of the court whenever it sees there are other persons, not made parties interested in the action without whom a complete determination of the action cannot be made, to order such parties to be brought in. (Code, § 122.)

If the creditors and next of kin were before the court, its determination of the question would be binding on all interested. So that under any circumstances, there is no objection to a recovery in an action like this.

The appellant also makes a point, that there is no sufficient allegation in the complaint that he was appointed administrator of the estate. I think the allegation is sufficient. It alleges that the former administrator was duly removed by the surrogate of Monroe county, and the appellant appointed in his place, and that the appellant was now such administrator. The words " duly by the surrogate of Monroe county" apply as well to the last part of the sentence as to the first.

The judgment of the Supreme Court should be affirmed with costs.

HUNT, Ch. J., WOODRUFF, GROVER, DANIELS and JAMES, JJ., for reversal of General Term.

MURRAY, MASON and LOTT, JJ., for affirmance of General Term.

Order of General Term reversed and that of Special Term affirmed.