NEW YORK COUNTY.— HON. D. C. CALVIN, SURROGATE.—
February, 1877.

## MATTER OF ERLACHER.

*In the matter of the estate of* GEORGE A. ERLACHER, *deceased.*

Administrators are justified, even as against creditors, in burying the deceased according to his rank and station in life, but before erecting a monument or head-stone, and enclosing the burial plot, should wait until they have ascertained the condition of the estate; and in case the estate can not pay creditors in full, they will not be allowed for expenses of a monument.

In a case where the deceased was an assistant engineer in the fire department in the city of New York, at a salary of $2,000 per year, and was well connected, *held*, that funeral expenses of $334.70 might be allowed.

MATTER OF ERLACHER.

It appearing that the estate amounted only to $2,625.78, *held*, that the administrators should be allowed only $250.00 of $670.00 expended by them for a monument and enclosing the burial plot.

Administrators should not, before ascertaining the amount of the estate, purchase a larger burial plot than is necessary to bury the deceased; and where, therefore, an administratrix for the burial of the deceased purchased in her own name half a plot in Greenwood Cemetery at a cost of $270 (though by the rules of the cemetery she might have purchased a quarter plot), and afterwards the estate realized only $2,625.78, *held*, that she should be allowed only $135.00 for the purchase of the plot, though there were no creditors of the estate.*

In determining what should be allowed for the purchase of a head-stone for the deceased, although regard should be had to the proportion which it bears to the amount of the estate, yet the former decisions as to what that proportion should be should not be strictly followed, but regard should be had to the increased cost of such articles since these decisions were rendered.

THIS was a final accounting by the administrators, the account, to which objections were interposed, having been filed September 21, 1875.

The facts appear in the opinion.

DEVELIN & MILLER, *and* JOHN F. BAKER *for the next of kin.*

THOMAS E. STEWART, *for the administrator.*

THE SURROGATE.— The objections considered, and on which testimony has been given, are to $70 paid to Nicholas Walsh, sexton, for expenses of deceased's funeral; and to C. J. Winterbottom and Co's. account

---

*In the MATTER OF WOOD [decided Surr. Ct., N. Y. County, May 18th, 1876,] it appeared that the decedent's estate amounted in value to less than $2,800, and that $700 was charged by the administratrix for burial lot and monument, and $200 additional was placed to the account of funeral expenses. *Held* [citing the authorities relied upon in MATTER OF ERLACHER (above reported); and Springsteen *v.* Samson (32 *N. Y.*, 703)] that the charge for burial-lot and monument was excessive.

In the MATTER OF MOUNT [decided Surr. Ct., N. Y. County, June 7th, 1876,] the evidence showed that out of an estate of $983.30 the administratrix paid $425 for funeral expenses, besides $60 for clergyman's fee and music, and $78 for a gravestone. *Held* that only $200 should be allowed for funeral expenses, and $50 for a grave-stone.

as undertakers, $294.70; to the charge for Greenwood Cemetery and burial plot, $270; to two items of $75 and $50 paid to William H. Townley, attorney and counsel fee; and to the charges, for Messrs. Auchterlony and Zandy, for a monument, $350, lettering, $54, and enclosing burial plot, with granite posts, &c., $266; making for the monument and accompanying expenses, $670.

Testimony was principally taken before my predecessor, and concluded before the present Surrogate. Thomas E. Stewart, one of the executors, testified that he received from the estate of Andrew Erlacher, decedent's father, $2,625.78; that he knew the deceased well, and that several years ago he boarded at several prominent hotels in the city, and appeared to be in good circumstances; that a few years before his decease he called upon witness to become surety for the uniform he was about to purchase as fireman, saying that he had not money enough to purchase it, without getting credit; that he thought this was about two years before his death; that at his death he was an assistant engineer of the fire department; that he did not consider the plot in Greenwood Cemetery excessively expensive, considering decedent's circumstances, or that the expenses of the monument, or of the funeral were so; that the counsel's fees mentioned were paid necessarily in proceedings taken in behalf of the estate, to enforce its claims against the representatives of his father's estate, and that the charges were reasonable; that the deceased at the time of his death lived in a house, or part of a house in 6th Avenue; that he was buried from St. Joseph's

Church; that it was a public funeral, a large procession of firemen attending; that he was informed by his co-administratrix, Mrs. Erlacher, that the deceased had expressed a desire to be buried in Greenwood Cemetery, and that he did not desire to be buried in his father's lot in the cemetery of the Holy Cross, at Flatbush, because it was low and damp.

James F. Taylor, a fireman, testified that he knew the deceased; that he was a fireman, and foreman for a time, and received $1,500 a year as such.

David McAulay testified to the execution of the deed to Mrs. Erlacher of a lot in Greenwood Cemetery for $270; that it was a half lot; and that the lots were divided into one quarter, one third, one half, and whole lots.

The witness Stewart, being recalled, testified that decedent was held in high esteem in the fire department; that his associates seemed to be different from the ordinary class; that the amount of property he was entitled to from his father's estate was about $4,000; that the funeral at the church was under the auspices of the fire department, a band of music being employed, and the church draped; and that the reason he assented to the expenditure for the monument was that the money from his father's estate belonging to the decedent, the Surrogate of Kings County, on the accounting of his father's estate, allowed $500 for a monument, and because of his social position.

Austin Leek testified that the funeral in question was a public funeral, and firemen and policemen were present, fire commissioners, and the usual attendants upon the public procession of a man killed in the performance of his duty, and that he was reported to have moneys besides his salary.

James F. Taylor testified to the official position of the deceased; that in a conversation with the deceased he told him he did not desire to be buried in Flatbush Cemetery; and that the deceased's salary at the time of his death was $2000 a year.

From the evidence in this case I am of the opinion that the objections to the sexton's charge, the undertaker's, and the two counsel's fees are not well taken.

I am of the opinion, under the circumstances of the case, that the bill of the undertaker was not unreasonable, considering the station in life of the deceased, and the amount of his estate.

But as to the expenses incurred for the burial plot in Greenwood, and the monument erected over the remains of the deceased, I am of the opinion that the expenditure is excessive, and should not be allowed.

It has been urged on behalf of the executors that the fact that the decedent was a public officer, and the Department desired a public demonstration at his funeral, afford sufficient reasons for the large expenditure, but I am not able to perceive any good reason why any public demonstration should be demanded, especially where those urging it do not assume the pecuniary responsibility of it.

*Willard on Executors* (p. 272), makes a very judicious distinction between expenses of the funeral, and the erection of a head stone, or monument, and after reviewing numerous authorities, says: "The principle which seems deducible from the cases is that when the estate is large, and the claims of creditors do not intervene, the personal representatives are justified in burying the deceased in the style and manner

usually adopted for persons in the like rank and condition in society, but if the deceased were insolvent and of respectable standing, the expenses of a funeral corresponding in style to what is usually the ordinary custom of the country for persons moving in the same style, would be allowed, but tomb-stones need not be purchased until the personal representatives have ascertained the state of the deceased's assets. It is believed that they are not a proper charge, in any case, against creditors." The case under consideration does not affect creditors, but the next of kin.

Regarding this conclusion of the learned commentator as both reasonable and authoritative, I am of the opinion that the expenses of a monument, and the decoration of the burial plot, should have been postponed until the amount of the estate was definitely ascertained, and upon the assumption that the executors knew the real value of the estate when those expenses were incurred, I am of the opinion that the expenditure for the monument and enclosure exceeding $250, was excessive, and should not be allowed, and this amount is considerably in excess of the allowances in the cases which were cited by the learned judge in his treatise.

In Ferrin v. Meyrick (41 N. Y., 315) Hunt, C. J., in discussing this question, says: "The contract for grave stones was proved to have been made. They were of a character suitable to the rank and station in life of the deceased, and to the circumstances of his estate. He [the administrator] had a right to contract for stones, suitable to the rank and station in life of the deceased, and to the estate left by him

— he had no right to contract for stones of an unsuitable character; thus, for the grave of a man leaving an estate of $10,000 or $20,000, a monument for which the expense should be from $100 to $200, would very likely be deemed suitable and reasonable. The administrator decides at his own peril as to the amount of the expenditure which would be allowed, or disallowed, on the final settlement of his accounts with the Surrogate, as it shall be deemed reasonable or otherwise."

The decisions which have been generally followed in this country are English authorities, and those which I have had occasion to examine in this state, were cases arising prior to 1869, and it seems to me reasonable that some consideration should be given to the generally recognized fact, that the expense of a monument, as well as of other things, has been of late years greatly enhanced, and hence the proportion of expenditure to an estate in England, would not be entirely reasonable in this country, and in the present times, and it is apparent that each case must be controlled by its peculiar circumstances, and cannot, except as to general principles, be made conclusive authority for any other.

The evidence in this case shows that the burial plot was purchased by a conveyance taken in the name of the widow and co-administratrix, and was for half a lot, and that the cemetery in question sold quarter lots. It also appears that the father of the intestate owned a cemetery lot in Flatbush, Queen's County, but that the deceased had expressed a disinclination to be buried there in consequence of the low and damp

soil, but as the widow took and holds the title to the burial lot, which is chargeable to the estate at $270, and as it is quite clear from the evidence that a much less expensive lot could have been procured by the purchase of a one-quarter lot, and it does not appear in this case that a single burial plot or grave could not have been purchased, I am of the opinion that the charge for the cemetery lot should be reduced one-half, to wit, $135.

Let a decree be submitted in conformity to the above conclusion, for settlement on one day's notice.