Owen, J.
In 1876, Tilomas L. Boyd, as administrator of Firman Probasco’s estate purchased of A. E. Messerly a monument for his intestate’s grave, paying a part thereon in money and giving his note, as administrator, for the balance, payable to the order of Messerly, who thereupon gave to Boyd, as administrator, receipts for $450, as paid to him by Boyd for the monument.
*581 In May, 1877, Messerly sold and. transferred this note, before due, to the Farmers’ National Bank of Franklin. In April, 1878, Boyd made settlement of his accounts in the probate court, which approved them, allowing him credit upon his receipts for the $150 as paid for the monument, and finding still in his hands $1,218 which was ordered to be paid to the widow and heirs of the intestate. The bank had no notice of it, nor of the allowance of the credit to Boyd of the $150.
In October, 1878, the bank recovered a judgment upon this note against Boyd, as administrator, for $352.29 and $6.27 costs, to be levied of the goods of the intestate in his hands. An execution promptly issued upon this judgment according to its terms, upon which the sheriff made return that he found “no goods or chattels, lands or tenements belonging to the intestate in the hands of T. L. Boyd on which to levy.”
In January, 1879, the bank brought suit against Boyd jointly with Curtis and Ilill, his sureties, upon the administration bond, alleging as breach of its conditions the failure and refusal of Boyd to pay this judgment.
Neither Curtis nor Hill had actual notice of the proceeding to recover, or the recovery of this judgment. In the trial below, the bank recovered judgment against the defendants below for $388 and costs, which was affirmed on error by the district court.
The present proceeding is by Curtis and Hill to reverse these judgments.
If, upon the facts above stated, the failure of Boyd to pay the judgment recovered upon the Messerly note was a breach of the conditions of the bond, the judgments below should be affirmed ; if not, they should be reversed.
At the time this monument was purchased, it was lawful for the probate court, at its discretion, to allow the administrator in his settlement any just and reasonable “amount expended ” for a monument; but the administrator was not allowed to interfere with the heirs of the intestate in erecting one. S. & S. Stat. 356. Boyd had no power to bind the estate, unconditionally, by the purchase of a monument. He *582 took the risks of a refusal of the probate court to allow the “ amount expended ” by him for it, and of his interference with the heirs in erecting one. In either contingency the estate would be exonerated from the burden of its cost. But ho made an unconditional purchase; paid part of the price in money, gave his note for the balance, and took receipts evidencing payment in full for the monument. In this he clearly exceeded his power as administrator. But it is urged that the “amount expended” for the monument was allowed by the probate court. True, but that court was not called upon to approve an executory contract by the administrator to pay in future for the monument, nor to approve his act of giving a negotiable note for it. The transaction was presented to that court as an executed one, and the vouchers were evidence of actual payment. They were, as such, approved, and upon the faith of them the settlement was made. If Hesserly, who empowered the court, by his receipts, to give credit to Boyd, had been plaintiff below, instead of the bank, he could not have been heard to say that the monument was not paid for, and thus collaterally question the settlement, which as a creditor he could have directly attacked. 76 Ohio L. §§ 3, I, p. 957.
This settlement not only determined the rights of the distributees, but was the test and measure of the liability of the sureties. .Did Messei-ly impart to the bank, by the transfer of the note, a better title than his own? If he did, it was in virtue of its negotiable qualities and its transfer before due. Could Boyd bind the estate of his intestate by giving negotiable paper as administrator? This would be a dangerous power and would enable him to do that by indirection which the law does not permit to be done by direct means, — charge his intestate’s estate unconditionally by acts which the law contemplates shall depend for their validity upon the supervision and approval of the court appointing him. To treat those who acquire, before due, and without notice of equities, negotiable paper' issued by a personal representative as such, as innocent purchasers, and thus *583 disarm the estate of its just defenses, is to leave it an easy prey to his improvidence or corruption.
It is not 'only the plain policy of our law, but it is due to his sureties, that the administrator bo held rigidly within the express authority of the law in the administration of his trust. Lucht v. Behrens, 28 Ohio St. 240.
That the giving of a negotiable note, as administrator, is such a departure from his authority as to relieve the estate, and hence his sureties, from liability, is a proposition so firmly established both upon principle and authority as to leave no excuse for controversy. King v. Thom, 1 Term, 489; Cornthwaite v. First National Bank, 57 Ind. 268; Bittenhouse v. Ammerman, 64 Mo. 197; Christian v. Morris, 50 Ala. 585; Kessler v. Hall, 64 N. C. 60 ; 1 Edwards on Bills and Notes, § 75 ; Gregory v. Leigh, 33 Texas, 813. See also Ferrin v. Myrick, 41 N. Y. 315; Austin v. Munro, 47 N. Y. 360.
But it is maintained by counsel for the bank that “the judgment against the administrator is conclusive on the sureties unless impeached for fraud or mistake,” and that “ the plaintiff having no actual notice of the settlement is not estopped to maintain the action on the bond against the sureties.” The infirmity of this reasoning is in its assumption of the very thing in controversy, the liability of the estate upon the note and judgment. As the estate was not bound by the note, the sureties are not estopped to deny the validity of the judgment upon it. We conclude, then, that whatever liability Boyd may have incurred individually upon the note or judgment, they did not so far create or evidence a liability against his intestate’s estate as to render his refusal to pay the judgment a breach of any of the conditions of the bond, and hence, upon the facts presented upon 'the record before us, Curtis and Hill, the sureties, were entitled to judgment.

Judgment reversed.