## City Court.

*Trial Term—June,* 1884.

## JOHN HENRY HULL *against* ENOCH MORGAN SONS CO.

Liability of corporation and trustees for counsel fees. Where the trustees of a corporation have a contest as to the regularity of their election, or as to the propriety of their conduct, and employ an attorney to represent them, they become personally liable to the attorney for his fees, but the latter has no claim therefor against the corporation. Ordinarily, the officers of a corporation, in employing an attorney, make the corporation liable only in the cases in which it is a party, or is pecuniarily interested. Nothing short of an official act of the corporation, evidenced by an entry on its minutes or the like, will make it liable for fees in contests or litigations in which it is not a party, or in which it is rot pecuniarily interested.

*J. H. Hull* and *J. A. Mapes,* for plaintiff.

*Blatchford, Seward, Griswold & Da Costa,* for defendant.

McADAM, Ch. J.—The jury, upon the trial, by special verdict, found that the services specified in the bill of particulars prior to July, 188?, had been fully paid. It was, by consent of the parties, reserved for the court to decide whether the defendant (a corporation) can legally be charged for the services specified in the bill of particulars to have been rendered subsequent to July, 1882, and if so, to determine the reasonable value of such services.

The items of the bill so reserved may be grouped under two heads, viz.:

First. Services rendered in the matter of the petition to set aside the election of trustees, held on April 17, 1882, on the ground of fraud, collusion and conspiracy.

Second. Services rendered in 1883, in what may be called the injunction suit, to restrain the majority directors from passing what were termed illegal amendments to the by-laws.

The rendition of the services is not disputed, but it is contended by the defendant that the services were not rendered upon its retainer, and were not for its benefit.

The defendant does not question the correctness of the rule laid down in the case of American Ins. Co. *v.* Oakley (9 *Paige*, 496), where Chancellor WALWORTH said: "It is a matter of every-day occurrence for the president or other head officers of a corporation to employ and retain attorneys and counsel to prosecute or defend suits, or to assist in legal proceedings in which the corporation is interested" (see also Hooker *v.* Eagle Bank of Rochester, 30 *N. Y.* 83, 86). These decisions are founded on the principle that an act within the scope of an officer's authority, or within the scope of its legitimate business, will bind the corporation.

But it is claimed that the scope of an officer's authority as an agent of the corporation does not extend to matters in which the company has no interest. The first bill is for services claimed to have been performed in the supreme court, in the matter of the election of trustees of Enoch Morgan Sons Company. The proceeding was instituted upon the petition of George F. Morgan and John H. Evans, claiming to be holders of a majority of the stock of said corporation, to set aside the election of trustees, had in the spring of 1882, upon the ground of conspiracy and fraud on the part of the trustees who were elected. The application was directed against the five trustees who claimed to have been elected, and

Hull *v.* Enoch Morgan Sons Co.

"Enoch Morgan Sons Company," the defendant herein, was made a nominal party defendant. The contest was really one in which the two petitioners on the one side and the five trustees upon the other were alone interested.

"In this question the corporation had no interest. No possible determination of it could affect either the existence or the rights, or the property of the society. No corporate duty was neglected by omitting to defend against it. If it should be determined that the trustees held the office by legal election, of course there would have been no effect either upon corporation or individuals. If it should be determined that their claim to the office was invalid, there would simply result to the corporation the opportunity and duty to proceed to a legal election. While it is better that corporate offices should be exercised by officers *de jure* than by officers *de facto*, it is not for the reason that corporate life is necessarily put in jeopardy by the latter. Therefore, it was not the right of the committee to expend corporate money in defending for themselves the personal privilege of holding office; they were not necessary to the corporate existence. Indeed, the real peril to the society would seem to rest in the claim that its members, as individuals, can, without its consent—without its knowledge, even—expend a part or all of its property in personal contests for the possession of its offices" (Harrison *v.* First Presbyterian Society, 46 *Conn.* 529. See also Smith *v.* Duke of Manchester, *L. R.* 24 *Ch. Di.* 611; *Green's Brice's Ultra Vires*, 2 ed. 284, 285; Kernaghan *v.* Williams, *L. R.* 6 *Eq. Cas.* 228; Smith *v.* Nashville, 4 *Lea*, 69, 72; People *v.* Lawrence, 6 *Hill*, 244; Healey, *v.* Dudley, 6 *Lans.* 115, 127; Halstead *v.* Mayor, 3 *N. Y.* 431; 1 *Dillon Munic. Corp.* 2 ed. § 147; *In re* Bell, 2 *Upper Canada C. P.* 507; Wadsworth *v.* Herkimer, 35 *N. Y.* 189; Merrill *v.* Plainfield, 45 *N. H.* 126; Gregory *v.* Bridgeport, 41 *Conn.* 96; Vincent *v.* Nantucket, 12 *Cush.* 103; Butler *v.* Milwaukie, 15 *Wisc.* 493).

Many of the authorities cited are municipal corporation cases, in which, in the different ways the question arose, the courts adhered to the rule that neither of the rival claimants to an office can legally charge the corporation with the expense of the contest, and that any appropriation of money by the corporation for such a purpose is illegal.    I have not overlooked the fact that the plaintiff was one of the counsel of the corporation defendant.

The minutes of the corporation contain the following:

"Meeting April 26, 1877.

"The president stated that there were numerous counterfeits and infringements of our sapolio—he thought it best we should take all necessary steps to protect our rights.    It was then move l and seconded that the president and treasurer be constituted a committee on law, with power to employ counsel, pay the same, and do all things necessary in the matter of sapolio, and report the same to the board."

This resolution limits the employment of counsel to infringements and the like of sapolio.

At the meeting held July 16, 1877, it was reported that C. A. Seward, Esq., and J. H. Hull, Esq., had been retained under this resolution.

The by-laws (art. 4) provide that the president shall appoint and discharge all employees subject to the approval of the board.    He shall have general charge of and supervision over all the business of the company, and over all its employees, and he shall do and perform all acts incident to the position of president, authorized or required by the general law under which the company is organized.    There is nothing in the minutes of the corporation authorizing the employment of the plaintiff as counsel to defend the five trustees against the application made by Mr. Morgan, nor is there any implied authority in the president under the provision of the by-laws just

referred to, which authorized him (the president) to do any act or thing except those acts and things which were incidental to his position or required by the general law under which the company was organized.

We must therefore find the proof of the plaintiff's employment in the evidence. The plaintiff testified that Mr. Simons, Edward Ellsworth, Henrv Ellsworth and Mr. Sturges (four of the trustees) asked him to lay aside everything in order " to protect them from the charges of fraud and conspiracy " made in connection with the contested election. The plaintiff further testified : " I was told by these gentlemen that they were charged with fraud ; their characters were attacked ; their business character and integrity, etc., assailed." Such an employment, under the decisions cited, is an individual employment by the four persons named, and not an official employment by the corporation in a matter in which it is pecuniarily interested. The plaintiff must therefore seek his compensation from the individuals who employed him, as he has no legal claim therefor against the defendant corporation. True, the corporation was made a nominal party defendant to the controversy, but it had no pecuniary interest therein. Whether the plaintiff might lawfully charge a fee for looking out for its interest in the controversy, need not be discussed, because no separate charge for this specific service has been made or proved, and the cause was tried and must be disposed of on the general ground that the defendant is either liable or not liable for the services rendered in defending the trustees against the charges of fraud and conspiracy made in the election contest.

The plaintiff claims that even under the authority of Harrison v. First Presbyterian Church (46 Conn. 529) his claim against the corporation is authorized, and he cites the following language of a learned text-writer in reference to the rule declared in that case : " Courts consider the corporate rights somewhat liberally, and therefore if

legal proceedings be necessary to protect the mayor or other members of the governing party in the discharge of his functions, or to secure the corporation against the doing of acts which may, though indirectly, affect its interests, the costs of such proceedings may be defrayed out of the corporate assets ;" the purport of which, as I understand it, is that although perhaps not legally liable, the corporation may, in such a case, after officially determining that the act was for the benefit of the corporation, defray the costs of the proceedings out of the corporate assets. The corporation in the present case has not chosen to defray these expenses out of the corporate funds, nor has it officially determined that the services were in any way beneficial to it, nor has it in any official way recognized its liability to pay for such services.

In Holdsworth *v.* Mayor, &c., 11 *Adol. & Ell.* 490, which is cited to sustain the above proposition, the corporation, after determining that the act was beneficial to it, under its official seal, executed a bond to pay for the services rendered. The court held the corporation liable. DENMAN, Ch. J., said : " Even if the plaintiff had been the only member whose title was disputed, it is possible that the defense might justifiably have been ordered at the general expense ; for the rights of the corporation might have depended on the result; and if they had instructed him to defend under such circumstances, the bond would have been given for a proper consideration."

The corporation in that case in an official manner having recognized the propriety and validity of the debt, LITTLETON, J., said : " We are at liberty to suppose the quo warrantos brought under such circumstances that the existence and welfare of the corporation might depend on their result." The bond in that case created the privity of contract necessary to the maintenance of the action.

In the present instance, the corporation has declined to recognize the claim or to appropriate funds for its payment. It cannot be coerced to do either. If the cor-

Hull *v.* Enoch Morgan Sons Cc.

poration sued had given a bond to pay the plaintiff's bill, the case last cited might have been applicable. As no such obligation was given, it is unnecessary to consider whether that case is in accord with the American authorities upon the same subject. While it is an elementary rule that necessary expenses incurred in the execution of a trust or in the performance of official duties thrown on parties and arising out of the situation in which they are placed, may be paid by such parties without any express provision for that purpose out of the funds in their hands belonging to the trust, subject only to the final approval of the court in settling their accounts, yet the principle stated is for the protection of the trustees, and does not aid the plaintiff, nor does it give him a claim against the corporation.

The plaintiff's position may be likened to that of an attorney who performs professional services for the benefit of an estate ; his remedy is not against the estate, but against the trustee personally, and the latter is left to seek reimbursement out of the trust funds (Wilcox *v.* Smith, 26 *Barb.* 316 ; Bowman *v.* Tallman, 2 *Robt.* 385 ; Van Zandt *v.* Myers, 7 *Weekly Dig.* 390 ; Ferrin *v.* Myrick, 41 *N. Y.* 315 ; Mygatt *v.* Wilcox, 45 *Id.* 306 ; Austin *v* Munroe, 47 *Id.* 360 ; Davis *v.* Stover, 58 *Id.* 471 ; Stanton *v.* King, 69 *Id.* 609 ; New *v.* McNicoll, 73 *N. Y.* 127).

Under the circumstances it is clear that the plaintiff has no cause of action against the corporation, but must seek compensation for his services from the trustees who employed him.

The second bill is for services claimed to have been performed in an injunction suit to restrain the majority directors from passing what is termed illegal amendments to the by-laws. The action was against the five trustees individually, and the corporation was not a party. The injunction applied for was obtained, and was, after argument, continued. The suit was eventually compromised and discontinued. The plaintiff was employed by the

majority trustees to oppose the injunction applied for, and he must, for the reasons before stated (all of which are equally pertinent to this branch of the case), seek his compensation from them, leaving them to seek such redress as they may be advised.

For these reasons there must be a judgment for the defendant on the special verdict and on all the issues.