ORLEANS COUNTY.—HON. I. S. SIGNOR, SURROGATE.—
December, 1884.

## ALLEN *v.* ALLEN.

*In the matter of the estate of* ALFRED ALLEN,
*deceased.*

It being the almost universal practice for the family of a deceased person to wear mourning ; and a change of wearing apparel being thus rendered necessary as a part of the preparation for the funeral, and as a mark of proper respect for the dead ; this expense, when reasonably incurred by those for whom he was bound, in his lifetime, to provide, should be borne by his estate.

Upon the judicial settlement of the account of the administratrix of decedent's estate, objection was made by certain of the next of kin to an item of $56, expended for mourning goods for the widow, who was the accounting party, as excessive, and not properly chargeable against the estate. It appeared that the decedent left no children, and that the condition of the estate was such as that a surplus of several thousand dollars would remain after the payment of all debts.—

*Held,* that the charge should be allowed, as a part of the necessary, or, at least, proper funeral expenses.

*Held,* also, upon the same accounting, against a similar objection, that the widow should be allowed a reasonable expenditure ($19) for the disinterment and re-burial of decedent's remains,—the place where they were first deposited having been discovered to be undesirable ; also $175 for a mortuary monument ; and $40, the purchase price of a lot in a well kept cemetery, the title to which she was allowed to take and hold in her individual name.

HEARING of objections interposed by David Allen and others, decedent's nephews, to the account filed by Harriet Allen, the administratrix of his estate, in proceedings for judicial settlement. The facts are stated in the opinion.

THOMPSON & SPENCER, *for administratrix.*

E. R. REYNOLDS, *and* H. S. GOFF, *for objectors.*

THE SURROGATE.—The administratrix is the widow of Alfred Allen, deceased, who left no descendant, but left a mother and several nephews, some of whom appear by counsel, and object to certain items of the account presented. The first item objected to is one of $56.09, charged as paid for mourning goods for the widow, on the ground that it is excessive, and in no event a proper charge against the estate as part of the funeral expenses, or for any other estate expense. I am referred to no authorities in this State, nor have I been able to find any holding for or against this proposition. It seems that, in other states, and in the English courts, this question has been raised, and it has been held that a moderate allowance for mourning goods may be sustained as a part of the funeral expenses, where the rights of creditors do not interfere. Redfield (Surr. Prac., *3rd ed.*, 468) says: "Mourning for the family of the testator is not a funeral charge strictly speaking, although charges therefor have been allowed in some of the states;" citing a number of cases. McClellan on Ex'rs (*2d ed.*, 459) says: "Moderate expenses for mourning, for the widow and family, may be allowed as part of the funeral expenses." The rule has been long established that it is the duty of the administrator or executor to bury the deceased according to the rank he occupied in life, and according to the estate he left; the rule being that, when the rights of creditors are not interfered with thereby, he shall be allowed from the estate he may have accumulated a burial suitable and proper for one who has occupied his po-

sition in society, before his next of kin or heirs at law shall be allowed to come in and claim his estate.

What constitutes legitimate and proper expenses has been variously determined. It has been repeatedly held that a monument or headstone should be allowed as a part of the funeral expenses (Wood v. Vandenburgh, 6 *Paige*, 277; Ferrin v. Myrick, 41 *N. Y.*, 315). In the case of McCue v. Garvey, the items of funeral expenses included $47 for a wake; all of the charges were held by the Surrogate to be reasonable as funeral charges; he held, however, that the husband, and not the wife's estate, was liable therefor, and on that ground refused to allow the entire charge. The General Term, on appeal (see 14 *Hun*, 562), held that the Surrogate erred in not sustaining the charge against the estate. The Code of Civil Procedure, § 2749, says that the expression "funeral expenses," as used in that title, includes a reasonable charge for a suitable headstone. Thus, it will be seen that the funeral expenses of a decedent are not necessarily confined to the mere interment of the remains, but may, when the circumstances of the estate warrant it, include the expenses of a funeral according to the religion of the deceased, and such expenses as may be necessary to designate his resting place by a suitable monument or headstone.

The funeral could be conducted without a hearse, yet no one thinks of objecting to such an item of expense; though not absolutely necessary, the custom of society requires it; and it seems that, where custom requires and it is the almost universal practice for the family of the deceased to wear mourning,

and a change of wearing apparel is thus rendered necessary as a part of the preparation for the funeral, and as a mark of proper respect for the dead, this expense, when reasonably incurred by those for whom he was bound to provide in his lifetime, should be borne by his estate.    In this case, the entire expense for mourning goods is charged at $56.09, and includes a bonnet, dresses, gloves, a veil, cloak, etc.    The estate is apparently ample to pay all debts, and have several thousand dollars left.    One half of this expense will, in any event, come out of the share of the administratrix, which comes to her as the widow of the deceased.    I think this charge is a proper item, and must be allowed as a part of the necessary, or at least, as a part of the proper funeral expenses.

The administratrix at first buried her deceased husband in the cemetery at Waterport, near which they resided, and where it was claimed she had stated that her husband had expressed a willingness to be buried, saying that, if it was good enough for his brethren in the church to be buried in, it was good enough for him.    The administratrix denies this statement, and says that what she did state was that her husband said he had lived in Waterport long enough to gain a resting place there.    It appears in evidence that they owned no lot where he was first buried, and that, on inquiry, she was informed that she could obtain no good title to the lot.    The ground was very much neglected, and, as one witness testifies, the fences were from one third to one half down, gates off the hinges, and the ground growing up to briars which covered nearly one half of it; wood-

chucks, or some other animals, were digging into the ground; he saw half a dozen holes, one day, right into a grave. Under these circumstances, the administratrix determined to remove her husband's remains to Mount Albion cemetery, some nine miles distant, where she could purchase a lot in a well kept cemetery. The expense of taking up, removing and reinterring the body was $19, very little of which would have been incurred, had the burial first taken place there, in addition to the expenses of the first interment. This may be regarded as additional expense, and this it is claimed the administratrix should pay entirely from her share in the estate, or from her own private funds, if she has any, and relieve contestants from paying any portion thereof.

The item of $40 for a lot at Mount Albion is also objected to as improper. It does not appear how much a lot at Waterport would have cost, if one could have been purchased; so it cannot be said how much could have been saved the estate if one could have been purchased there; but the administratrix testifies that she purchased only half a lot at Mount Albion, and that that was as cheap as she could buy a lot in a desirable location. She also erected a monument at a cost of $175, on the lot purchased. The title to the lot was taken in the name of the widow, and it is claimed that both the item for the monument and the item for the lot should be disallowed. It appears in evidence that, for thirty-five years, the administratrix and her husband had lived together, and for more than thirty years on the same farm, and had together accumulated the property left by him. The estate,

after paying all debts, would, including real estate, leave a surplus of several thousand dollars. I think that, under all these circumstances, the administratrix had a right to select a place for the burial of her husband where not only he would be willing to be buried, but she would prefer to be buried, provided she did not incur unreasonable expense in so doing; and in this case I consider that she did right in removing the body, purchasing the lot and erecting the monument.

People living in her vicinity were accustomed to purchase lots in Mount Albion, and bury their dead there; and, had the first interment been made there, I do not see how any one could have questioned the propriety of it, nor do I think her course in expending the extra amount necessary to accomplish her desire in this respect at all open to criticism. The title to the lot was in my opinion properly taken in her own name; it was for the burial of the *family of the deceased*, which consisted only of himself and wife, and she, as sole survivor of the family, was the proper one to hold the deed. None of the next of kin or heirs at law had any interest in this lot. In this much of the estate, at least, the wife should have as much interest as her husband, viz.: the right to be buried on it and to exclude any not of the immediate family.

The charges objected to are, for these reasons, allowed, and a decree may be entered accordingly.