HULDAH CLAPP, Plaintiff, *v.* ROBERT C. CLAPP, Individually and as Executor, etc., of HAWLEY D. CLAPP, Deceased, and Others, Defendants.

### (Claim of LEO C. DESSAR.)

*When compensation for services, rendered by direction of an executor, can be collected out of the assets of the estate.*

Where the owner of a hotel, managing the business thereof during his lifetime, leaves a will directing that after his death it is to be carried on by his son and executor for the benefit of the estate of the deceased, and such business is so carried on after his decease, and services necessary to enable the son and exector to carry out the intention of the testator and beneficial to the estate are rendered by an attorney under a special agreement that the same are to be paid for out of the estate, and the son and executor is insolvent, an action will lie to enforce the payment for such services out of the assets of the estate.

Appeal from an order confirming the report of a referee as to a claim of Leo C. Dessar against the above named defendant.

*Charles P. Crosby* and *Thomas B. Rand*, for Thomas B. Rand, receiver, appellant.

*S. G. Adams*, for Leo C. Dessar, claimant, respondent.

Brady, J.:

Mr. Dessar claiming a lien upon the lease of the Rossmore Hotel, an order of reference was made for the purpose of ascertaining the value of the services rendered by him upon which the claim rested. The services, it was asserted, were rendered for the estate of Hawley D. Clapp, deceased, who was the acting principal in the business which was conducted at the Rossmore Hotel in this city, which he carried on with his son Robert, the defendant, under the name of Hawley D. Clapp and son. By his last will and testament he declared that the business mentioned was his chief property, the success of which he was very desirous of securing; entertaining the conviction he said that if the business were conducted with system, carefulness and prudence, and with strict and faithful attention it might and would become a source of large future profit; and reposing great confidence in his son Robert, who was then his co-partner and whose knowledge and experience in hotel business

he thought best qualified him among all his children for the trust, it was his wish that the Rossmore Hotel, upon his decease, should be conducted by him under the name of Hawley D. Clapp & Son for the benefit of all the family, and that he should have the sole management thereof, without the control of the other members of the family and without interference on their part other than such friendly advice and counsel as they might from time to time give, which he charged his son Robert to receive with kindness and respect. He suggested that if any difference of view should unfortunately arise between his son Robert and the other members of his family, his son Mortimer should be regarded as an umpire to adjust and settle such differences and that his decision and judgment in the matter should be concurred in and adopted by all the parties. He also states that while he gave the sole management of the hotel to his son Robert for the purpose of securing its better success by having one head until his brothers should be qualified to share it with him, he did not mean that his brothers might not resort to the courts for better protection to their interest, if, unfortunately, Robert should prove unfaithful to the trust and confidence thus reposed in him.

A reference to these provisions of the will is deemed necessary in order to sustain the claim made by Mr. Dessar, for the reason that he was employed after the death of the decedent, and his services, unless brought within the exception, would be subject to the rule, in the attempt to recover for them, to wit: That contracts of executors, although made in the interest and for the benefit of the estate they represent, if made upon a new and independent consideration as for services rendered moving between the promisee and the executors as promissors, are the personal contracts of the executors and do not bind the estate, notwithstanding the services rendered are such that the executors should properly have paid for the same from the estate and be allowed for the expenditure in the settlement of their accounts, the principle being that the executor may disburse and use the funds of the estate for purposes authorized by law, but may not bind the estate by an executory contract and thus incur a liability not founded upon the obligation of the testator. (*Ferrin* v. *Myrick*, 41 N. Y., 315; *Austin* v. *Munro*, 47 id., 360; *New* v. *Nicoll*, 73 id., 131; *Application of Knapp*,

85 id., 284.) The exception to the rule is stated in the case of *New* v. *Nicoll* (*supra*). It is that when the trustee is authorized to make expenditures and he has no trust funds, and the expenditure is necessary for the protection, reparation or safety of the trust estate, and he is not willing to make himself personally liable, he may by express agreement make the expenditure a charge upon the trust estate. And a further exception seems to be recognized in the text-books, that in case of the insolvency of the executor an equitable cause of action would probably be created against the estate where the services are rendered for its benefit. (Redf. on Sur. [2d ed.], 496.) It will have been observed that the design of the testator was the continuance of the business under the management of his son Robert; and it clearly appears from the testimony in the case, no evidence having been given on the part of the defense, that the services of Mr. Dessar were rendered to the estate, his employment having commenced soon after the testator's death, and in reference to matters which, if not properly cared for by some professional person, would have involved the estate in great loss, if not in destruction. It is said for example on that subject, by Mr. Dessar, that in the suits which were brought against the estate, he must have saved it while acting as attorney at least $50,000, having given two years of almost uninterrupted devotion to it. It appears also that Robert C. Clapp is insolvent, and that when Mr. Dessar entered upon the discharge of his duties as the attorney for the estate, Robert C. Clapp explained to him that his affairs were complicated and that he could not be personally liable for the counsel fees in the matter, and that he would have to look entirely to the estate for payment, although he would, from time to time, make such payments as he could.

The record, therefore, presents these features: First. The continuance of the business by Robert C. Clapp, with all the incidents which were connected with that circumstance, involving, of course, the right to make such expenditures as were necessary to carry out the object of the testator. Second. The special agreement that the services should be paid for out of the estate. Third. The benefit to the estate resulting from the services rendered, and Fourth. The insolvency of the executor, Robert C. Clapp.

These elements would seem to be all that are requisite to bring

the case within the exception stated in *New* v. *Nicoll*, and also within the principle laid down in Redfield on Surrogates. It may be added that the referee found that Robert had no trust funds in his hands for the purpose of paying Mr. Dessar's claim; but that the services rendered were necessary for the preservation of the trust estate, and that the contract made with him was acquiesced in and ratified by the other parties interested in the estate. It is true that as to the acquiescence of the other parties interested in the estate there is some contention. But there seems to be sufficient, perhaps, to justify that finding. At all events, there can be no doubt on the evidence that the estate was benefited by the professional exertions of Mr. Dessar, and that he should be remunerated by compensation, if it can be secured to him by the application of any legal principle. It is said, however, that Mr. Dessar having commenced another action in the Superior Court, could not proceed with this; but the evidence shows that the action in the Superior Court was substantially abandoned. Mr. Dessar testified that all the arrangements were made for a discontinuance of that action, although no order to that effect had been entered, and this statement substantially disposed of the action in the Superior Court, without any formal order. It was virtually a discontinuance.

The order appealed from should be affirmed, with ten dollars costs and disbursements.

DANIELS, J., concurred.

Order affirmed, with ten dollars costs and disbursements.