1837.

Wood
v.
Vandenburgh.

</div>

---

### Wood and others *vs.* Vandenburgh and others.

Where the father by his will devised all his real and personal estate to one of his sons charged with the payment of several legacies to the other children of the testator ; and by a written agreement between the father and the son, the father covenanted not to revoke or alter the will without the consent of the son, and to give to him the immediate possession of the property, in consideration of which the son covenanted to support the father, and his mother during their respective lives, and to support his sister while she remained unmarried ; and the son died in the life time of the father leaving the mother and unmarried sister surviving him, having by his own will directed his executors to sell his real and personal estate, including that devised to him by his father's will, and after paying debts and funeral expenses to place the residue of the proceeds at interest and to pay such interest to his parents during their lives, except the interest of $500, which he directed to be applied to the education of his nephew together with a part of

the principal if necessary, and having also, by his will, directed his executors to pay the several legacies bequeathed to his brothers and sisters by his father's will, and to support his parents and his unmarried sister. according to the agreement with his father and to distribute the residue as directed in his own will; and the father, after the death of his son conveyed all his property to the executors to be disposed of according to the will of the latter; *Held*, that the proceeds of the property, except so much thereof as was necessary for the support of the parents and unmarried sister, must be disposed of in the same manner as if the son had survived and made his will after the death of his father; that the support of the parents and unmarried sister was in the nature of a debt due from the son under the agreement and must be first paid; that the legacies given by the father's will must next be provided for as a charge upon the estate devised to the son ; and that the residue, if any, must then be disposed of according to the other directions in the son's will.

And the will of the son having given to the unmarried sister a share of his residuary estate, after the death of his parents, in lieu of the provision for her support under the agreement with the father; *Held*, that she was bound to elect between such provision and the share of her residuary estate under her brother's will.

General legacies, although given for specific purposes, as for education or maintenance, must, as between themselves, all abate rateably in case of deficiency, unless there is something in the will of the testator indicating his intention that one should be paid in preference to another. But a legacy of piety, for the erection of headstones at the graves of the testator's parents or other near relatives, does not abate rateably, and should be paid in full.

A direction to the executors to erect a monument at the testator's own grave is not a legacy, but is to be considered as a part of the decedent's funeral expenses, where the rights of creditors are not affected.

Legacies which are not mere voluntary bequests, but which are founded upon a previous indebtedness or other valuable consideration, do not abate rateably with other general legacies; as the legatees in such a case take their legacies as purchasers.

Where the provisions of the will and situation of the testator's property were such as to render it proper for the executors to take the opinion of the court of chancery in relation to the rights of the several parties interested in the property, the costs of the executors, and of the guardians ad litem of the several defendants who were infants, were directed to be paid out of the estate.

January 23. THE bill in this cause was filed by the executors of Jacob G. Vandenburgh, deceased, to obtain a construction of his will, and the direction of the court as to the distribution of his estate among the several persons having claims upon the same, under the following circumstances: In January, 1825, G. Vandenburgh, the father of the decedent, and one

of the defendants in this cause, being possessed of a considerable real and personal estate, made his will and thereby devised all his real and personal estate to his wife for life; and, after her death, he devised the real estate, and the personal property not specifically bequeathed, to his son, the decedent in fee, charged with the payment of the following legacies within six years after the death of the testator, to wit: $100 to his daughter Sally, the wife of J. Van Valkenburgh; $100 to the children of his daughter Susan, wife of G. Vanderwerken; $200 to his daughter Catherine; $100 to his daughter Catalina, the wife of L. Ryersdorf; $100 to his daughter Getty, the wife of P. Ryersdorf. At the time of the making of this will G. Vandenburgh the testator and his son Jacob G. the decedent, entered into a written agreement, under their lands and seals, referring to the will and its several provisions, by which it was agreed that the decedent should go into immediate possession of the property thus devised and bequeathed to him, and use and enjoy the same, upon the condition that he should support his father and mother during their natural lives, and support his sister Catherine while she remained unmarried. And the father, on his part, agreed that he would not alter or revoke his will without the approbation of the decedent. Under this agreement the latter entered into the possession of the property and supported his parents and his unmarried sister until his death in 1828; and his mother died in 1829, leaving the father and sister Catherine surviving. Jacob G. Vandenburgh, by his will, after providing for the payment of his debts and a few specific legacies of small amount, directed his executors to sell his real and personal estate at such times as they and his father should deem best, and after paying debts and funeral expenses, to put the money at interest, and to pay the interest thereof to his parents annually, or as they should want the same during their lives, excepting the interest of $500, which was to be paid to his sister Catalina, for the education of her son Jacob Ryersdorf, and in case the interest should be insufficient for that purpose the executors were to make advances from the principal of the $500 from time to time as should be necessary, and to pay to him

what remained of that sum when he arrived at the age of 21. He also directed the executors to pay the several legacies bequeathed in the will of his father, and to support his father, mother and sister Catherine, according to his agreement; and he directed, that upon the death of his parents his estate, after reserving $500, which he directed to be paid to Jacob Rydersdorf his nephew, after the death of the testator's parents and when he became of age, should be divided into six equal parts, and one part thereof should be given to the children of his brother William, one part to the children of his sister Susan, and the other four parts to his sisters Sarah, Catalina, Catherine and Gertrude; and that if his sister Catherine would not accept the said share in lieu of her maintenance by the agreement, the same should be retained by the executors and applied to her support; and that Negro Tom should be maintained out of the testator's property during life. Soon after the death of the son, the defendant Gilbert Vandenburgh, in order to facilitate the trusts contained in the will of the decedent, released to his executors the property mentioned in the will and agreement of the father, in trust to sell and dispose of the same according to the will of the decedent. The bill alleged that the annual interest arising from the estate of the decedent, invested according to the directions of his will was insufficient, for the support of the father and his sister who remained unmarried, and the negro Tom; and that L. Ryersdorf, as the guardian of Jacob Ryersdorf the nephew, claimed a preference in payment of the annual interest of the $500 for his education, and also of another legacy of $500 in addition thereto; and that the other defendants who were interested in the estate of the decedent denied and resisted such claims; that G. Heath, one of the defendants, set up a claim against the estate as a creditor, but that nothing was due to him, and that his demand, as they believed, was also barred by lapse of time. The complainants, therefore, prayed among other things, that the rights of the several defendants in the estate of the decedent might be established by the decree of this court, and the necessary directions given for carrying the trusts of the will into effect.

1837.

Wood
v.
Vandenburgh.

The several defendants who were infants answered by their guardians. L. Ryersdorf and wife put in an answer by which they admitted the principal facts stated in the bill, but denied the correctness of the inventory made by the complainants and of the statements in the bill as to the extent of the property of the decedent. The other defendants suffered the bill to be taken as confessed.

*Teunis Van Vechten*, for the complainants.

*S. Stevens*, for L. Ryersdorf and wife, and their infant son.

*A. Van Vechten, & J. Rhoades*, for the other defendants, except C. Heath.

THE CHANCELLOR. As the answer of L. Ryersdorf and wife denies the correctness of the inventory made by the complainants, and as there are other allegations in the bill the correctness of which are material to be known before a final distribution of the estate can be made, and as many of the defendants are infants, there must be a reference to a master to take an account of the estate which has come to the hands of the complainants, and of the administration thereof. There is, however, sufficient before me to enable the court to settle the principal questions in controversy between the several defendants interested in the estate of the decedent.

It is supposed by the counsel for J. Ryersdorf, the infant nephew of the decedent, that it is not necessary to look into any transactions between Jacob G. Vandenburgh and his father previous to the will of the son; as the father has released to the executors all his interest in the property devised by his own will, in trust to sell and dispose of the monies arising therefrom according to and in compliance with the directions contained in the will of the son, in the same manner as if he had died seized of the whole real estate ; and to apply the money fully and absolutely to the purposes of that will. In giving a construction, however,

to this release of the father, we must look at the circumstances under which it was given, for the purpose of ascertaining what was the real intention of the parties to such release. By the original agreement the father had not given the property absolutely to his son, but had devised it to him charged with the payment of certain legacies and other testamentary provisions after the death of the mother; and had also covenanted not to alter or revoke his will without the consent of his son. It was still, however, a testamentary disposition of his property, which became lapsed by the death of the son in the lifetime of the testator. But as the agreement between the parties had been carried into effect in good faith by the son, so far as he was capable of performing it in his lifetime, and as provision had been made by him in his own will for carrying into effect not only the agreement with his father but also every provision contained in the will of the latter, the father very properly considered that it would be just and equitable to give to the several objects of the son's bounty the full benefit of the original testamentary disposition of the father's estate, in the same manner as if the devises and bequests in his favor had not become lapsed by death; subject, of course, to the charge of performing so much of the original agreement with the father as provided for the support of the father and mother and unmarried sister; and charged with the payment of the several legacies to those who were the other objects of the father's bounty, six years after the death of the latter. This, therefore, is the true construction to be given to the release to the executors. And the property in the hands of such executors, except so much thereof as was necessary for the support and maintenance of the father and the unmarried sister, must be disposed of in the same manner as if the son had survived his father and had made his own will after the property had become vested in him under the original will and agreement of the father; or rather, in the same manner as if the father, at the date of the original agreement, had conveyed to him all the property not specifically bequeathed, charged in the first place with the support of the father, mother and unmarried sister,

and then charged with the payment of the several legacies mentioned in the will of the father. I am satisfied no other construction can be given to these complicated transactions without doing violence to the intentions of the parties thereto.

The weaver's loom, with the fixtures and improvements, and the wearing apparel of the father and his household furniture, which were specifically bequeathed by his original will, still belonged to him, and formed no part of the personal estate of the son; and if he had not altered his will in this respect, or otherwise disposed of the loom and furniture in his lifetime, these specific bequests did, upon his death, vest in those for whom they were originally intended by the will, so far as they had not become lapsed by the death of the legatees in his lifetime. They are therefore to be laid entirely out of the question in taking the account of the estate of J. G. Vandenburgh which has come to the hands of his executors.

The agreement with the father, for the support of himself and wife, and his unmarried daughter Catherine during her celibacy, constituted an unliquidated or unascertained indebtedness of the decedent which he owed at the time of his death; although by the terms of the agreement it must necessarily be ascertained afterwards. And as the will of the decedent directed all his just debts to be paid out of his personal estate, or out of the proceeds of the real estate if the personal fund proved insufficient, the agreement for the support of the father and unmarried sister was not discharged by the release of the father to the executors; which release was perfectly consistent with this claim against the estate of the decedent, under the trust for the payment of debts as contained in the will of the latter. But as the will of the decedent has made a provision in favor of the unmarried sister for her support after the death of her father, in lieu of the provision contained in the agreement, she must elect, before the master, between the agreement, as to her support after the death of her father and this residuary bequest to her in the will of the decedent. If she elects to receive her support subsequent to the death of her

father, as a debt which is entitled to priority of payment under the agreement, then her share of the residuary fund, if any, is to go to the other residuary legatees. And the master, in that case, must ascertain and set apart a sufficient fund for her support for life, if she shall remain so long unmarried. But if she shall elect to receive what she may be entitled to under the residuary clause of her brother's will, then the master is to allow for her support up to the time of her father's death only, and she must refund to the executors what she has since received. The decree must also declare that the provision for the support of the parents and unmarried sister was a debt due from the estate of the decedent, and was entitled to a preference in payment out of any funds or property which belonged to him at the time of his death, or which his executors have since acquired under the release from the father.

The legatees named in his will and codicils, were next entitled to their specific legacies of particular articles of the decedent's personal property, to wit, the two mares and colts, and his wearing apparel. If the other real and personal property which belonged to the decedent at the time of his death was more than sufficient for the support of his parents and unmarried sister, and the payment of other debts and funeral expenses, and the erection of grave stones, as provided for in the will, the legacies for the support of negro Tom, and of $500 and interest to Jacob Ryersdorf for his education, must next be provided for out of the proceeds of that part of the estate; and the master must set apart a sufficient fund for the support of negro Tom, and for the payment of the $500 and the interest now due thereon. And if that part of the decedent's property is not sufficient for both legacies they must abate rateably; or the payment of the residue of both out of the estate of the decedent's father, which was released by him to the executors, must be postponed to the payment of the several legacies which by the will of the father were charged upon the estate devised to his son. As the legacy of $500 for the education of Jacob Ryersdorf, and the provision for the support of negro Tom are both general in their natures, and

are payable out of the same fund, without any indication in the will of the decedent that either should have a preference over the other, they must of course, in case of a deficiency of assets, abate rateably. (*See Ward's Law of Leg.* 371 ; 2 *Will. Law of Ex'rs,* 840.) But it appears to be altogether unreasonable that the intention of the testator to have suitable head stones erected at the graves of his parents and of his deceased brother and sisters should be defeated by an abatement in favor of general legatees, upon a deficiency of assets. And I find a precedent for giving a preference to such a testamentary disposition of the decedent's property, in the case of *Masters* v. *Masters ;* in which case Sir Joseph Jekyl decreed a provision for the erection of a monument to the memory of the mother of the testatrix to be paid in full, notwithstanding there was a deficiency of assets to pay all the general legacies. (*See* 1 *Peer Wms. Rep.* 423, 6*th Lond. ed. note* 1 ; *Ward's Law of Leg.* 375.) I shall therefore direct the master to make a suitable allowance for the erection of these head stones, out of the decedent's own estate, in preference to any general legacies. The erection of a suitable head stone at the decedent's own grave may properly be considered as a part of his funeral expenses, in a case where the rights of creditors cannot be defeated thereby.

The payment of the general legacies to the four sisters and to the children of a deceased sister of the decedent, which were charged upon the estate devised to him by the will of his father, are entitled to a preference in payment, out of the proceeds of the estate which was released to the executors by the father, next after the provisions for the support of his parents and the unmarried sister, before any of the legacies and bequests which are contained in the will of the decedent only, to which his legatees would not have been entitled, under the will or agreement of the father, if the decedent had died intestate after his father's will had taken effect by death. In other words, the executors took the property released to them by the father, charged not only with the support of the decedent's parents and unmarried sister as a specific lien thereon as for a debt, if the other

*1837.*

Wood
v.
Vandenburgh.

estate of the decedent was not sufficient for the payment of that debt, but they took it also charged with the payment of the legacies, six years after the death of the father, according to the terms of his will, as I have before stated. By the will of the decedent, taken by itself, these legacies which are directed to be paid to his father's legatees, would as general legacies be liable to abate rateably with the legacy for the support of negro Tom and for the education of Jacob Ryersdorf, if all the legacies in respect to the decedent were mere gratuities or bounties. But as he was to take the property, devised to him by his father, charged with the payment of these first mentioned legacies, there was, so far as related to that fund, a valuable consideration for this testamentary gift of the decedent. Those legatees, therefore, take their legacies as purchasers ; and they are only liable to abatement as between themselves. (*See Heath* v. *Dendy*, 1 *Russ. Rep.* 543 ; *Davenhill* v. *Fletcher*, 1 *Blunt's Amb.* 245, *note* 2 ; 2 *Will. Law of Ex'rs*, 839.) The sum of $500, out of the proceeds of the property released to the executors by the father of the decedent, must therefore be set apart and securely invested for the payment of these legacies at the expiration of six years after his death ; and the interest or income thereof, in the meantime, must be disposed of as a part of the funds of the estate, for the payment of debts and other legacies not before provided for.

As the support of the parents and unmarried sister and of negro Tom, exceeded the income of the estate, exclusive of the $500 and interest for the education of J. Ryersdorf, there was no interest or income to be paid over to the decedent's parents, for life, beyond the amount of the provision for their support. The next question which arises, therefore, is, whether the nephew, Jacob Ryersdorf, was entitled to a second legacy of $500, payable out of the residuary estate of the decedent after the death of the father and after the nephew shall be of age. And upon a comparison of the several claims of this will, I am satisfied that the testator intended that his nephew should have two legacies of $500. The legacy for his education was to draw interest

from the time of the settlement of the estate, or the invest-
ment of the proceeds thereof: that is, from the expiration
of one year after the death of the testator, which is the
time allowed by law for that purpose.  And the principal
of that legacy was to be paid when the legatee arrived at
the age of twenty-one or sooner, if necessary, even if the
testator's parents should then be living.  But the other leg-
acy is made payable out of the residuary estate of the de·
cedent, after the payment of all other legacies and claims
thereon except those in favor of the residuary legatees.
And by the terms of the will, this last legacy of $500 was
not to be paid until after the death of both of the testator's
parents, and when the legatee should have arrived at law-
ful age.  It was a vested legacy, but payable in futuro ;
and which does not carry interest until after the time ap-
pointed for its payment.  This last legacy of $500 must
therefore be paid out of the residuary estate, if any such
there shall be ; and if paid before the time appointed for
that purpose by the will of the testator, the interest thereon
until that time must be discounted.  Whatever remains of
the estate after that must go to the residuary legatees of the
decedent, according to his will; subject, however, to the
directions herein before given as to the election of Cathe-
rine the unmarried sister, between the one-sixth of the resi-
duary estate and the provision for her support after the
death of her father, according to the agreement of the de-
cedent.

As it was proper for the executors to take the opinion of
the court in relation to the various and entangled equities
of the several defendants, arising out of this very compli-
cated trust, their costs, and the costs of the guardians ad
litem of the several infant defendants, must be paid out of
the funds in the hands of the executors.  And a decree
must be entered according to the preceding decision and
directions ; which decree must also declare that the defend-
ant Heartt has no claim upon the estate as a creditor.  If
practicable, the consequential directions to the executors
upon the coming in and confirmation of the master's report
should also be contained in this decree ; so as to save to

the estate the unnecessary expense of bringing the case before the court upon any equities reserved. I understand that Gilbert Vandenburgh, the father of the decedent, has died since the argument of this cause; and as the whole of the subject of this litigation survives to the other defendants, there must be an order suggesting his death and directing the cause to proceed against the other defendants alone. The general decree in the cause will then be entered, leaving out his name in the title, or naming the other defendants as his survivors.