# Eliza Beck, Appellant, *v.* Montgomery, Guardian, &c.

A. by will devised slaves to B. upon condition that a given sum of money should be paid annually to children designated in the will, and a certain amount on their arriving at majority. B. having accepted the devise, it was held to be an estate upon a condition subsequent; and that, inasmuch as the will did not direct security to be given, the probate court could not require it, the trust in favor of the children being a lien upon the property.

The remainder man only has a remedy for his ultimate security, when the estate is in danger of being wasted.

APPEAL from the probate court of the county of Jefferson.

At July term, 1842, of the Jefferson probate court, Andrew Montgomery, guardian of James Norris, Emily Norris and Patrick Norris, filed a petition, praying a citation against Eliza Beck to appear in court, and either accept or reject the provisions made in the will of Mary Norris, deceased; by which certain slaves are willed to her upon condition that she becomes bound to pay to said children the sum of four thousand dollars on their coming of age, &c., and also praying that she be required to give security for the prompt and faithful payment of said four thousand dollars, agreeably to the provisions of the will, and for the annual payment of four hundred dollars, as specified in the will. The fourth clause of the will was as follows:

"I give and bequeath unto my daughter Eliza Beck, the following slaves, with their increase from this time, to wit: (naming the negroes, ten in number,) all valued by me at the sum of four thousand dollars, under the following conditions, to wit: that the said Eliza Beck agrees to receive the above named negroes mentioned in this section, at the valuation last above mentioned, as her own property, and in consideration of which she the said Eliza agrees and becomes bound to pay unto the guardian or guardians of the children of my late son John S. Norris, deceased, that is to say,

James, Emily and Patrick Norris, the yearly sum of four hundred dollars, during the minority of said children, for the maintenance and education of said children. The said yearly payment above mentioned is not to commence until the expiration of twelve months after the said Eliza shall obtain possession of said slaves, being after my decease; and further, that at the majority of said children, James, Emily and Patrick Norris, or as each of them comes of age, the one third part of the principal of four thousand dollars, shall be paid to them by said Eliza, her heirs, executors, &c., to each in proportion to those that survive, which amount being paid is in full contemplation of this my will; and in event of the death of all the said children before they arrive at maturity, or to the age of twenty-one years, then I devise and desire that one half of the said principal of four thousand dollars, shall be paid to the children of my son-in-law Andrew Montgomery, and the remaining half to the children of said Eliza, or their lawful representatives. And it is further my will and desire, that the said Eliza Beck shall not be compelled to pay to the guardian of said James, Emily and Patrick Norris, the said yearly sum of four hundred dollars, until said guardian or guardians shall fully satisfy the said Eliza that the said sum of four hundred dollars is necessary towards the yearly maintenance and education of said children, James, Emily and Patrick; and if said Eliza is not satisfied, and does not pay over the said sum of four hundred dollars yearly, the amount shall cumulate in her hands for the use and benefit of said children, on they or each of them coming of age. Also as the said amount of principal being four thousand dollars, is or shall be paid at the time each of said children arrives of age, then only a proportionate part of said yearly sum is to be paid to the children then in their minority, or their guardian."

Eliza Beck appeared in court, and waived citation, and "accepted the trusts assigned her in the will," and thereupon the court on the prayer of the petitioner, ordered and decreed that Eliza Beck be required to give bond and security in the sum of six thousand dollars for the faithful performance of the trusts assigned to her by the will of Mary Norris, deceased.

From this order requiring security, an appeal was taken to this court.

Eliza Beck, Appellant, *v.* Montgomery, Guardian, &c.

J. B. COLEMAN for appellant.

The probate court had no jurisdiction over the subject matter of the petition.

Its jurisdiction under the constitution, over "orphans business," can only be held to extend to that class of cases in which the party in conflict with the orphan, is either an officer of the court as a guardian, &c., or in some way amenable to its control and subject to its process.

To hold that the jurisdiction of the probate court extends to every case in which an orphan may be a party, or have an interest, would be in effect to oust the chancery and circuit courts of a large and important branch of their acknowledged jurisdiction, and to confer it upon a tribunal, which from its very organization would be incompetent to give the parties litigant a fair and constitutional trial of their causes.

In Green *v.* Tunstall, this court in speaking of the power of the probate court over the sureties of administrators, &c., say: "It (the act of the legislature) never could have been designed to confer upon the court the right to call in third persons, who are under no obligations, and have no official relation to the court. The administrator is liable to be proceeded against in the mode here pointed out, because being an office of the court, it can act upon him and coerce his appearance. The sureties are in no way amenable to that court." 5 Howard, 651.

The principle settled in the foregoing case, fully embraces that now before the court.

By the will of Mrs. Norris, certain property is bequeathed to the appellant, coupled with a trust that at certain subsequent periods, and upon certain conditions, she will make certain payments, &c.

Of the particular fund then, which she is thus required to pay, she is but a trustee; and in regard to it, bears no official relation to the probate court. She is not an officer of that court, being neither executrix, administratrix or guardian. She is under no obligations to it, but is in the language of the case above cited, a mere third person, and in no way amenable to the court.

The object of the petition is nothing more than to compel a trustee to give security for the faithful performance of the trusts.

Had the appellant been created trustee by a regular deed of con-

veyance from Mrs. Norris, it would hardly be contended that the probate court would be the proper tribunal to coerce the execution of the trusts, or to compel security for their eventual performance. That she was appointed by will instead of by deed, neither changes her attitude as trustee, or brings her within the control, or subject to the process of the probate court.

Like all other trustees (who bear no official relation to the probate court,) she is only amenable to chancery, and to that court, it is conceived the application of the appellee for security should be made, and if he be able to make a proper showing, his prayer will doubtless receive a most respectful consideration.

But even if the probate court had jurisdiction, it erred in ruling the appellant to security.

Viewing her only in the light of a trustee, she derives her appointment solely from the will of Mrs. Norris, and by that instrument, the trust is confided to her without any requirement of security. The whole tenor of the will, as well as the discretion with which she is invested in reference to the payment or non payment of the annual stipend of four hundred dollars, (a portion of the very sum for which she is required to give security,) shows clearly the confidence which the testratrix, who was her mother, reposed in her.

To compel her, then, to enter into security, which is neither required or contemplated by the instrument of her creation, would seem rather unreasonable, without some showing being first made of a necessity for it.

No such showing is even attempted. No allegation that the fund is unsafe or insecure, or that the property is about to be squandered, or removed without the jurisdiction of the court. Even fraud, or fraudulent intent, that charge with which more than any other, the ears of courts have of late years become familiar, is not whispered against her. Not a suggestion is thrown out to sustain the prayer of the petition.

The petitioner simply goes into the probate court, and prays that Mrs. Beck may be required to give undoubted security, &c. and the court, as though it were a motion of course, grants his prayer without asking any questions. With equal propriety

Eliza Beck, Appellant, *v.* Montgomery, Guardian, &c.

might they upon a similar application have ruled any or all of the debtors of his wards to additional security upon their bonds, bills, or promissory notes.

It is said that the will requires that Mrs. Beck shall become bound to pay, &c., and it is contended that being a *feme covert*, she can only become bound through the instrumentality of third persons as her security.

The language of that portion of the will, (page 4 of record,) is in effect that upon her agreeing to take certain negroes bequeathed to her, at the price of four thousand dollars, she then in consideration thereof agrees and becomes bound to pay, &c.

It is conceived that the proper construction of this clause of the will is, that by the act of agreeing to take the negroes, &c. she at once, and without any further steps to be taken by her, becomes bound. Her election to take the negroes at the price of four thousand dollars *per se* fixes her liability, and from that moment she is bound to pay, &c. Nothing further appears to have been contemplated by the will, and certainly nothing further is necessary to carry out the provisions of the will in reference to that particular matter.

Admit, however, that under the foregoing clause of the will, it was necessary that she should formally execute a bond; if being a *feme covert*, she is unable to bind herself without the instrumentality of third persons as her security, it is somewhat difficult to comprehend how she can succeed in doing so through their instrumentality.

Though, as *feme covert*, she could not bind herself in such a way as to be liable to an action at law, we apprehend that a court of equity would find but little difficulty in compelling her to execute the trusts with which she is invested, and to account for the fund for which she has become bound.

ELLETT, *contra.*

The probate court has full jurisdiction of orphans' business. How. and Hutch. 26, sec. 18, and 468, sec. 1.

The legacy to Mrs. Beck was conditional, and could only vest on her compliance with the condition. It was surely competent

for the guardian of the Norris's to cite her to appear, and signify her election or rejection of the legacy.

Having accepted the bequest, nothing would seem to be more proper, than that the probate court, in the protection of the interests of the minors, should require her to give security for the large fund left in her hand.

She stood in the light of a committee of the estate of the minors, and should no more be exempted from giving security than the committee of the person.

Besides, the legacy by the will, is to vest in Mrs. Beck, upon condition that she becomes bound to the guardian for the payment of the money. Being a married woman, she could only become bound through the instrumentality of third persons as her sureties. It is but reasonable and highly proper that security should be given, and it is thought the court below committed no error in requiring it.

Mr. Justice CLAYTON delivered the opinion of the court.

The controversy in this cause arises out of the following clause in the will of Mary Norris, deceased: "I give and bequeath to my daughter, Eliza Beck, ten negro slaves, with their increase, valued at four thousand dollars, under the following conditions—that is to say, that she, the said Eliza Beck, agrees to receive the above named negroes, at the above valuation, as her own property; and, in consideration of which, she, the said Eliza Beck, agrees and becomes bound to pay unto the guardian of the children of my late son, John S. Norris, deceased, the yearly sum of four hundred dollars, during their minority, for their maintenance and education; and further, that, at the majority of said children, or as each of them comes of age, the one-third part of the principal of four thousand dollars shall be paid to them by said Eliza, her heirs, executors, &c. to each in proportion of those that survive, which amount being paid is in full contemplation of this my will."

The guardian of the infants cited Eliza Beck to appear in the probate court and say whether she accepted the legacy. She appeared and accepted it. The guardian then filed a petition, praying the court to rule her to give bond with surety for the payment of the sums of money mentioned in the foregoing clause. The

Eliza Beck, Appellant, *v.* Montgomery, Guardian, &c.

probate court required her to give bond and security in the penalty of six thousand dollars, from which order she appealed to this court.

The will does not, in express terms, require any security to be given, nor do we see any intention manifested to that effect.

To determine the case, it is necessary to ascertain the nature of the estate taken by Mrs. Beck. We esteem it to be an estate upon a condition subsequent; that is, the payment of the money bequeathed in the clause referred to. Upon failure to comply with this condition, at the proper time, the estate, at law, would be forfeited, and vest in the infant legatees. 2 Thomas's Coke, 20, n.

This pecuniary legacy forms, in equity also, a charge upon the slaves, and constitutes a lien upon them. There is a strong resemblance between a charge and a trust, yet there is a distinction between them. When there is a bequest in trust to pay legacies, after their payment the remainder, if any, sinks into the residuum; but when there is a charge created, the whole estate passes subject to the charge. 1 Roper Leg. 343, 347; King *v.* Denison, 1 Ves. & Bea. 272. But the intention of the testator in both is carried out, in much the same way, by compelling the party to make good the trust or charge. Ibid. The lien created by the charge is specific, as if for a debt. Wood *v.* Vandenburgh, 6 Paige, 285.

In this case, then, a security is provided by law for the payment of this charge; a lien upon the property itself. If Mrs. Beck had not elected to take the property under the will, it would have passed to these children of Norris; as she has elected to take it, it must be subject to the charge of their legacy, and remain so subject until paid. Were the court to direct her to give other security, it might, with plausibility, be contended that the charge was thereby removed.

If the tenant for life is about to commit waste, or do other injury to the estate, the remainder-man may compel him to give security. This is upon the principle that the tenant for life is a trustee for those in remainder. Westcott *v.* Cady, 5 John. Ch. 349; 2 Paige, 122; 1 Yer. 73; 1 Iredell, 134. This principle has been repeatedly applied to cases in which there was apprehenson that the

trust property would be removed beyond the limits of the state in which the trust was created.    Smith *v.* Daniel, 2 McCord's Ch. R. 149; 2 Robin. Pr. 227.

The children of Norris would no doubt be entitled to invoke the aid of the proper tribunal, if any circumstances should occur to render the application of this familiar principle necessary or proper.

The order of the probate court will be reversed.