LEWIS W. SCOFIELD, APPELLANT, *v.* ZIBA T. ADAMS, AS
   EXECUTOR, ETC., OF MARY M. SCOFIELD, DECEASED, AND
   OTHERS, RESPONDENTS.

*Legacy for support of relative — though a general legacy, not subject to abatement.*

A. testatrix, in addition to certain legacies to others, gave to her husband the use
   of certain specific articles of furniture and also the use or avails of $5,000,
   with so much of the principal as should be necessary for his comfortable
   support.    What remained on his decease was left to other parties.    The
   estate of the testatrix was insufficient to pay the legacies given by the will, it
   having been supposed by her to be much larger than it was.    *Held,* that the
   legacy to the husband was a general one ; that it was not, however, subject
   to abatement, as it was given for the maintenance and support of a near
   relation of the testatrix, and hence not subject in that respect to the rule
   applicable to general legacies.

APPEAL from a decree of the surrogate of Saratoga county, made
upon the final settlement of the accounts of an executor, and direct-
ing the distribution of the funds belonging to the estate.    The tes-
tatrix, after providing that her husband should furnish his room
after her decease with certain specific articles of furniture, further
provided as follows :

"I also give my husband five thousand dollars ($5,000)' to be put
at interest, the principal interest to be used for his comfort and
benefit.    When he is done with it, and after his funeral expenses
are paid out of it, if there is any thing left, let the things be
sold, and all of whatever is left of the money be put at interest
for Mamie and Gussie Adams, when they are of age to be given
them."

The will also directed the payment of other legacies, the aggre-
gate of which was far in excess of the estate of the testatrix.    The
surrogate decided that the legacies (including that to the husband)
should be proportionately reduced.

*Pond, French & Brackett,* for the appellant.

*Putnam & Eustis,* for the respondent, Mattie Blossom.

BOARDMAN, J.:

The will of Mrs. Schofield, brought before the court for construction on this appeal, is singularly informal and somewhat indistinct in its provisions relating to her husband, the appellant. Precisely what she intended in his behalf is left in some obscurity. Of course, her intention, when discovered, must prevail, if not inconsistent with the settled rules of law; and the intention must be determined from the language of the will itself, construed in the light of the surroundings at the time the instrument was made. There is here nothing *aliunde* the will itself to aid in its construction, if, indeed, any extrinsic evidence could be of use in that regard. It seems, from the will, that the testatrix was a married woman who had conducted business on her own account, and had accumulated, as she supposed, property, subject to her disposal, exceeding in value $20,000. Without here noticing her gifts of various specific articles to several persons, principally as keepsakes, and probably of no very great value, and as to which no question arises on this appeal, it appears that the testatrix gave to her husband certain furniture with which to furnish his room, and $5,000, to be put at interest and to be used " for his comfort and benefit," with some possible addition thereto, which bequest will be presently more minutely considered. She also gave to Mervin Adams and to Mattie Blossom each $1,000, and to Frank S. Berry and to Mamie L. Adams each $500, and, by a residuary clause, she gave whatever should remain, after satisfying the previous provisions of the will, to her nephews and nieces who were " *the most needy*." Whether this last clause of the will be or be not void for uncertainty is here of no importance, inasmuch as there was not any residue or remainder on which it could take effect. It is only important here to be mentioned for the purpose of showing that the testatrix supposed that there would be sufficient of her property to satisfy all the bequests in her will, both general and specific, with a residuum. It turned out, however, on the settlement of the executor's accounts before the surrogate, that there was, in fact, only $6,502.58 to meet and answer the bequests to her husband and the other four persons above named, which bequests to them amounted in the aggregate to $8,000. The surrogate held, on the accounting, that these bequests were general legacies alike, and therefore subject to abatement in equal ratio.

The husband, the appellant, claimed, and here claims, that the bequest to him being declared to be " for his comfort and benefit " should be construed and deemed to be a specific legacy, or in the nature of a specific legacy, hence to be answered before the other money bequests, which are admittedly general legacies. The statute provides that general legacies shall abate in case the estate be insufficient to satisfy them in equal proportion. (2 R. S., 90, § 45; 3 id. [6th ed.], 98, § 56.) The first question, then, which arises is, whether the legacy to the husband in this case is to be deemed a general or a specific legacy. Let us, then, first see precisely how the bequest to the husband stands in the will. The testatrix, in the first place, provided for the furnishing of the husband's room with specific articles of furniture belonging to her, and in her possession, intending, as is unquestioned, that he should use and enjoy this property during his life. She then adds as follows: " I also give my husband $5,000, to be put at interest, the *principal interest*" (so in the original) " to be used for his comfort and benefit." Now, if left here, the gift would be an absolute one to her husband of $5,000, as the fair and necessary import of the sentence, standing alone and unqualified, would be a gift of that sum to him. But immediately following this sentence she makes this declaration, " *when he is done with it*" (meaning the fund above alluded to, and apparently having in mind a separation of the fund from the interest), " *and after his funeral expenses are paid out of it, if there is any thing left, let the things be sold*" (evidently referring to the room furniture first provided for his use), " *and all of whatever is left of the money*" (that is, all that shall be left of the $5,000, and the avails of the sale of the room furniture) " *be put at interest for Mamie and Gussie Adams, when they are of age, to be given them.*" Now, to this point, construing the language employed according to its manifest import, there is no difficulty in determining what the testatrix intended. She did not intend an absolute, unqualified gift of $5,000 to her husband, for she directed it to be put at use for his comfort and benefit ; and she anticipated that some of it might remain after his decease, subject to her disposition by gift to Mamie and Gussie Adams. And it is equally plain that she intended he should have the use or avails of it, with something more to be taken from it, if his necessities should require this. While she did not intend to

give this sum to him, absolutely, she evidently proposed to devote that amount to his use for his comfortable support and maintenance, and that whatever should remain of it, on his decease, should go to Mamie and Gussie Adams. This intent is, as I think, sufficiently expressed to give it effect as a testamentary disposition of the sum specified by the testatrix. Briefly and formally stated, she gave to her husband the use of certain specified articles of room furniture for life, also the use or avails of $5,000, with so much of the principal as should be necessary for his comfortable support, and on his decease, what should remain, to go and belong to Mamie and Gussie Adams. This was a valid bequest. (*Smith* v. *Van Ostrand,* 2 Weekly Dig., 228; S. C., 64 N. Y., 278.) Nor is such purpose and intention of the testatrix at all changed or qualified by the additional sentence, that "if the money above mentioned is not enough for his use, more is to be taken from the principal and added to it." This is but a repetition in effect of what she had before stated. She, doubtless, here had in mind the interest or avails of the $5,000, which she calls "the money above mentioned," and which she feared might not be enough for his use. This sentence was probably inserted by way of explanation of what was thought to have been before vaguely stated. Then, as regards this legacy of $5,000, declared to be "for the comfort and benefit" of the legatee, or, in other words, for his comfortable support, is it to be deemed general or specific? A legacy is general when it is so given as not to amount to a bequest of a particular thing or money of the testator, distinguished from all others of the same kind; and is specific when it is a bequest of a specified part of the personal estate which is so distinguished. (*Tifft* v. *Porter,* 8 N. Y., 516, on page 518; Wms. on Ex., 838.) In the sense of its being distinguished from other money of the testatrix, the legacy in this case is not specific. It is not a bequest of any particular specified money, distinguished from other money of the testatrix, or of any particular specified property from which the fund was to come or be made up. But it was a bequest of money as to the husband, to be employed for his support, and as regards any remainder there might be, it was general, of money to Mamie and Gussie Adams. In the sense of its being a money bequest it was a general legacy. But there is another rule applicable to legacies, here invoked by the appellant, to wit, that legacies for mainte

nance and support of those standing in near relation to the testator, and more or less dependent upon his bounty and otherwise unprovided for do not abate with general legacies. This rule stands upon the ground that the testator must have intended to give a preference to such legacy over all others of a general character. So Lord Chancellor HARDWICK said, in *Lewin* v. *Lewin* (2 Vesey's Ch., 415, 417), that " it was natural in such case for a testator, in making a disposition of his estate, so to give it that the provision for wife and children should be in the first place, and not to abide by the contingency of his estate producing more or less at the time of his death and of sharing in proportion with others, strangers in blood, though friends to him or collateral relations, to whom he had given legacies; " and he added that " it was natural he should not intend they should abide that event, though that is the general rule of law." A like authority is found in *Stewart* v. *Chambers* (2 Sandf. Ch., 382), where the rule is laid down that legacies for support and maintenance of a wife and children otherwise unprovided for do not abate with general legacies. In the case cited, like the case in hand, the estate to be disposed of by the will was supposed much larger than it proved to be, and this fact was deemed of importance in determining the intent of the testator, as to whether the legacy for the support of the wife and children should or should not abate with the general legacies. The learned assistant vice-chancellor there said, in substance, that he was persuaded, from the language of the will, that if the testator had anticipated the existing state of facts he would have been explicit in giving preference to the legacy for support and maintenance. These views apply with force to the present case. The testatrix held the comfort and happiness of her husband above all other considerations in making disposition of her property. She made it a special request " that every thing be done for my husband's comfort and happiness," and then immediately added, that if the money appropriated for his use was not enough for that purpose, then that more be added to it. He was unprovided for save by this legacy, which was declared to be " for his comfort and benefit." Nor did she anticipate that her estate would be insufficient to satisfy all her bequests in full. The principle of law here under consideration was applied in a liberal and enlightened view in *Petrie* v. *Petrie* (7 Lans., 90), where it was

declared that a legacy for *education* like one for maintenance was to be preferred to general legacies. This doctrine was also recog nized by the chancellor in *Wood* v. *Vandenburgh* (6 Paige, 277). The only case I find intimating a different rule is that reported in the New York Legal Observer (*In the Matter of Williams* [12 N. Y. Leg. Obs., 179]). This was a case decided by the surrogate of Kings county. The head-note is this : That the legacies for life to the widow and adopted child were general legacies, and were sub- ject to abatement with the other general legacies in the will. On looking into this case, however, it will be found to present this important feature ; that the legacies and investments were all charged alike upon the general fund. So it is stated in the case as reported. Consequently there was a clearly-expressed intention that all should stand alike in the application of the fund provided for this payment. If made to stand alike by the terms of the will, they should abate alike in case of an insufficiency of the estate fully to satisfy them. Nor does it appear in that case that the legacies to the widow and adopted child were for support and maintenance. Perhaps this might be inferred from the fact that they were annui- ties, but it does not appear that it was so expressly declared. It would seem, too, that these legacies had no especial claim to pro- tection in equity on any ground whatever, as the learned surrogate held that they stood like any other gratuitous general bequest to a stranger. The learned surrogate doubtless did not intend to cast any doubt, as he could not, indeed, upon the correctness of the decisions in the cases cited, for they are well based on sound prin- ciple. The rule of law enunciated in them is reasonable, as it is natural and in accordance with common sentiments of affection, which cannot be entirely ignored in giving construction to wills. It commends itself to the conscience as just and right. It would be unnatural not to intend especial favor in the bestowal of bounties to those who were strong in the affections and dependent upon kind regard. So it will be presumed that legacies for the *support and maintenance* of those standing in near relations to the testator, more or less dependent upon his bounty, were intended by him to have preference over others of a general character. It is then but fair and just to conclude in this case that the testatrix did not intend that the legacy to her husband, being for his comfortable support,

should abate with the general legacies; that she did not contemplate its failure in the least, on account of any possible insufficiency in her estate fully to answer it. On the contrary, it must be presumed that she intended to honor it with a preference over the general bequests to others, and this conclusion seems well warranted by the tenor of the will itself. It should, therefore, be construed in accordance with such presumed intention.

An inquiry doubtless will be made as to the rights of Mamie and Gussie Adams in view of this conclusion. In the first place, it is not certain that they will ever be entitled to any thing under the will. The entire $5,000 may be required by the legatee for life for his support and maintenance. How long he may live and what expenditures his necessities may require are uncertain. What will remain of the money and property held for his use, on his decease and after payment therefrom of his funeral expenses, will belong to Mamie and Gussie Adams. The gift of such remainder, like the pecuniary bequests to Mervin Adams, Mattie Blossom, Frank S. Bay and Maurice L. Adams, will be general in character and subject to abatement in common with the other general legacies. Such remainder will be the measure of the gift on which to base the calculation for the abatement. But this will be a matter for attention after the decease of the legatee for life, so be it that any thing shall remain of the fund provided for such legatee's use.

The decree of the surrogate must be reversed, with costs of the appeal to be paid from the estate; and the case must go back to the surrogate, to the end that the decree may be corrected, so as to meet the views herein above stated.

LEARNED, P. J., and BOOKES, J., concurred.

Ordered accordingly.