CATHARINE OWENS, APPELLANT, v. J. J. BLOOMER, ADMINISTRATOR, AND MARY WELCH, ADMINISTRATRIX, ETC., OF JOHN WELCH, DECEASED, JOHN O'BRIEN AND ALFRED BRINK, RESPONDENTS.

*For what debts, land may be sold by surrogate — Funeral expenses — what included in — Monument — when allowed as part of.*

The words "funeral expenses," as used in chap. 267 of 1874, declaring for what debts lands of the deceased may be sold by the surrogate, include the cost of a suitable head stone to be erected at the grave of the deceased. When, however, the estate does not exceed $8,000, an expenditure of $500 in erecting a head stone is extravagant and far too great to be allowed as a proper part of the funeral expenses.

An appeal lies by the heir-at-law from a decision of the surrogate, made in proceedings for the sale of real estate for debts, adjudging certain claims to be valid and subsisting demands against the deceased and his estate.

APPEAL from an order of the surrogate of Chemung county, made in proceedings instituted before him by the administrators of John Welch, deceased, for leave to sell his real estate for the payment of his debts.

*R. King*, for the appellant.

*J. McGuire*, for administrator and administratrix.

*John A. Reynolds*, for O'Brien and Brink, respondents.

LEARNED, P. J.:

Application was made by the administrator and administratrix to the surrogate, under the statute, for authority to sell lands of

the deceased for the payment of debts. Upon such application the surrogate made an order, adjudging certain claims to be valid and subsisting demands against the deceased and against his estate. (2 R. S., m. p. 102, § 16 [13].) From so much of this order of adjudication as respects one of these demands the heir appeals.

The first objection is that an appeal does not lie. The statute gives an appeal from orders, decrees and sentences. (2 R. S., m. p. 610, § 23 [105].) The matter appealed from is entered as an order. By the language of section 16 (13) above cited, the surrogate is to "adjudge valid" the demands, and to enter them in the book of his proceedings.

The heir had a right to contest the validity of the debt. (§ 13 [10].) The question as to such validity may be the important matter in the proceeding. I see no reason why the statute giving the right of appeal does not include this order.

On the merits of the controversy the question is whether the disputed demand is one for which the surrogate may order a sale of the real estate. The facts are that the personal estate of the deceased was $153.50, of which $150 were set apart to the widow. The real estate was estimated from about $7,000 to about $10,000. The sister of the deceased is his heir. His widow survived him. The surrogate allowed a bill of the undertaker for the expenses of the funeral, amounting to about $176; and also a bill of a grocer of about eight dollars, for candles, etc., used at the wake. Some other small bills also were allowed. To all of these no objection is made. He also allowed a claim of $500 and interest for a monument, ordered by the administratrix and set up at the grave of the deceased. For this monument Mary Welch, the widow, and the administratrix, gave her note, which has not been paid. This demand is disputed by the heir.

Chapter 267 of the laws of 1874 declares that the debts for which land may be sold under such proceedings as these shall include "funeral expenses;" and the question is whether this monument comes properly under the words "funeral expenses."

In *Wood* v. *Vandenburgh* (6 Paige, 277), the chancellor said that the erection of a head-stone at the grave of the deceased might be considered a part of the funeral expenses. The same view is expressed incidentally in *Ferrin* v. *Myrick* (41 N. Y.,

315.) And this appears to me to be a sensible construction of the words "funeral expenses" in the statute. I think that a suitable head-stone to mark the place is a proper part of a decent interment. But the demand in controversy was not a mere head stone. It is called a monument, and the price shows that it was an erection of considerable display.

To show the views of courts in this respect, it may be noticed that, in the case last cited, it was remarked that, where there was an estate of $10,000 or $20,000, stones of the value of $100 or $200 would very likely be deemed suitable. Now in the present case the estate is probably not worth, judging from the evidence, over $8,000 at the outside. The widow and administratrix has caused a monument to be erected at a cost of $500. This is extravagant. If it be a gratification to the friends of a deceased that an expensive monument should be erected, they should themselves be at the expense. The only duty of the administrator or executor, in this respect, is to do those things which are proper for the decent burial of the deceased. They have no right to do anything for ostentation.

The real estate of the deceased had descended to the heir, and without her consent the administratrix should not have made so large and unnecessary an expenditure, if she expected that it was to be paid by a sale of the land.

There are some circumstances in the case which look as if the erection of the monument was really a personal transaction of the widow. The inscription states that it was erected by the wife of the deceased, and Mrs. Welch gave her own note for it. But even without regard to these facts we think that expenditure was far too great to be allowed as a proper part of the funeral expenses.

The order appealed from must be reversed in this respect, with costs personally against the administratrix and administrator, who included this demand in their petition.

Present — LEARNED, P. J., BOCKES and OSBORN, JJ.

Order reversed in respect to the claims for the monument, with costs personally against administrator and administratrix.