# SUPREME COURT.

MATTHEW McKEON agt. HENRY KEARNEY, as executor of the last will of MICHAEL McKEON, deceased, and others.

*Partition of lands under act of 1853 — Action for construction of a will — by whom should be brought — Bequests upon uncertain and impossible condi-'tions — Legacies, when to abate — Bequests to unincorporated societies.*

An action for a partition of lands, under the act of 1853, can only be sustained, when it is shown that the apparent devise, to which objection is taken, is void.

It is, however, only when the *whole* will, or entire *devise* of real estate, is attacked for invalidity, that a suit or proceeding can be instituted under the act above referred to.

Although an heir at law of the testator, who takes nothing under his will, cannot, when objection is made, maintain an action for its construction, yet where in such action, all the parties interested under the will, and in the estate, agree upon the facts, and ask for an adjudication:

*Held*, that this court had jurisdiction to decide the controversy.

Where a testator, in and by his will, gave to a " Missionary Association " $2,500, to be applied to the erection and completion of a church edifice for worship, "in the event of the decease of the testator before the aesociation should commence to erect the building," and it appearing that the association had commenced the erection of a church building for worship, before the death of the testator:

*Held*, that the gift to the association never took effect.

Courts never defeat the testator's expressed intentions, when they are valid, and are capable of execution.

Where a testator gave $5,000 to his executors to be invested, the income whereof was to be applied towards founding an institute, to be denomi-nated "The Little Sisters of the Poor," to aid and assist the destitute poor and needy in the city of New York, if such institution could be founded and put into operation by the encouraging efforts of others, within five years after the testator's death, if not, the above-mentioned sum was to be taken as part of the testator's residuary estate, it appearing that such institution had not been founded when the action was commenced:

*Held*, that the gift being upon an uncertain condition, "the encouraging co-operation" of others, was void for uncertainty and indefiniteness, and as dependent upon conditions which might never happen.

McKeon agt. Kearney.

When legacies are general, neither of the legatees is entitled to priority in payment, and in case of a deficiency of assets, the legacies must abate ratably.

A *voluntary unincorporated society*, organized for charitable purposes can- · not *take by bequest* (*vide* note at end of this case, page 355), in which it is, among other things, *held*, that the fact, that the "society" is an association, consisting of more than seven associates, having a president and treasurer, in the name of either of whom it may sue and be sued, does not constitute it a *corporation*, so as to enable it to take a legacy.

The statutes relating to the organization of joint stock associations bearing upon this subject examined,

*Special Term, December*, 1878

ACTION for the partition of lands, and for an adjudication, declaring void the last will and testament of the testator, through whom the plaintiff claims as heir at law. The plaintiff's complaint further demanded, that, if the will should be established, certain bequests therein contained should be adjudged to be void. The facts and claims of the parties interested under the will, and of the heirs at law, have been agreed to in writing, and have been submitted and the judgment of the court is sought thereon.

*A. B. Tappen*, for plaintiff.

*J. L. Lindsay and J. F. Harrison*, for executor.

*William H. Field*, for Catholic societies.

*F. Byrne*, guardian *ad litem*, for infant defendant.

VAN VORST, *J.* — By section 2, chapter 238 of the Laws of 1853, being an act "relative to disputed wills," any heir claiming lands by descent from an ancestor, who died holding and being in possession of the same, may prosecute for the partition thereof, notwithstanding any apparent devise by said ancestor; provided that such heir shall allege and establish in the same action that such apparent devise is void.

McKeon agt. Kearney.

Section 1 of the same act authorizes and empowers this court, in a proper action for the purpose, to determine the validity of any actual or alleged devise or will of real estate, in like manner, as the validity of a deed conveying or purporting to convey lands, might be determined by this court.

The complaint herein was, doubtless, designed to bring this action within the provision of the act of the legislature in question ; and its allegations are sufficient to give this court jurisdiction of the case.

It alleges that the will sought to be impeached was not duly executed. That the testator was not of sound testamentary capacity, and that the same was procured by undue influence.

But the difficulty of the plaintiff's case is, that the conceded facts do not authorize the granting of relief under the act of 1853.

It is admitted by the terms of the submission handed up, that the instrument set forth in the complaint is the last will and testament of the deceased, and that it was duly executed. The action for a partition of lands can only be sustained under the act of 1853, when it is shown that the apparent devise is void. Neither the will under consideration, nor any " *devise* " therein is void. But the complaint goes further, and the validity of certain *bequests* contained in the will is sought to be impeached, for the alleged incapacity of the legatees to take the gifts.

Some of the provisions and bequests of the will are conceded to be good, and are not objected to ; and I conclude that it is only when the whole will, or an entire *devise* of real estate is attacked for invalidity that a suit or proceeding can be instituted under the act in question.

The real estate is devised to his executors, in trust, and the testator directs them to sell the same at public or private sale, and to convert the same into cash, and out of the proceeds they are directed to pay the legacies declared in the will.

The provisions of the will work an equitable conversion of

the realty into personalty for the purposes of the will, some of which it is conceded are valid.

The plaintiff takes nothing under the will. If he succeeds at all to any portion of the testator's estate, it must be as one of the heirs at law or next of kin of the testator, through an adjudication that some of the gifts are invalid.

Were it not for the fact that all the parties are before the court, and have agreed upon the facts, and asked for a determination, with respect to the validity of certain bequests, I should hesitate to decide that this action could be maintained.

It involves, to some extent, a construction of the provisions of the will, and such action cannot be sustained in favor of an heir at law in equity. The plaintiff's rights, if the bequests are void, are legal and not equitable (*Chipman* agt. *Montgomery*, 63 *N. Y.*, 221; *Stinde* agt. *Ridgway*, 55 *How. P. R.*, ·301). There is not, however, an absolute want of jurisdiction in the court to dispose of the questions in some form (*De Bussierre* agt. *Holladay*, 55 *How.*, 210). And as to whether they shall be disposed of on the equity or law side of the court is within the control of the parties. If the parties in interest submit the case for determination by the judge at special term, I see no reason why jurisdiction should be declined. And this having been done, I shall proceed to dispose of the questions submitted.

Of the proceeds realized from the sale of his real estate, the testator gives to the missionary congregation of St. Paul's the Apostle, the sum of $5,000, and in the event of the decease of the testator before the association should commence to erect a church or building for worship, then, and in that case, he gives it the further sum of $2,500, to be applied to the erection and completion of the church.

This institution is a corporation duly chartered by statute.

The validity of this bequest of $5,000 is not questioned, and it is conceded that the corporation is entitled to take the same.

But the additional gift to this corporation, of the sum of $2,500, cannot take effect, for the reason that it commenced

McKeon agt. Kearney.

the erection of a church building for worship before the death of the testator.    The gift was upon the condition that the testator should die before the erection was commenced.    To give effect to this additional and conditional bequest, would be in direct opposition to the expressed intention of the testator.

The court never defeats the testator's expressed intentions when they are valid and capable of being carried out.    Five thousand dollars are given to the Catholic Publication Society, to be appropriated for the use and purposes of the society.

This society is a voluntary association, neither chartered nor organized by statute.

In the case of *Betts* agt. *Betts*, lately before me in this court; I had occasion to examine the question as to the capacity of a voluntary, unincorporated society, organized for charitable purposes, to take by bequest, and the conclusion reached was, that it could not take.    This conclusion was based upon several decisions of the court of appeals (*Owens* agt. *The Missionary Society of the M. E., Church*, 14 *N. Y.*, 380; *Downing* agt. *Marshall*, 23 *N. Y.*, 382; *Sherwood* agt. *Amer. Bible Society*, 1 *Keyes*, 561; *White* agt. *Howard*, 46 *N. Y.*, 144).

But, as, notwithstanding these decisions, which appeared to me disposed of the question, the point was presented and argued with great earnestness by the learned counsel of the Home Missionary Society, largely interested in the will under consideration, upon the supposed ground that the question was still open, and had not been definitely settled, I examined the cases above cited and reached the conclusion above expressed, that upon authority such voluntary association could not take by bequest.    The reasons assigned for such decision were stated in that case, and I still adhere to the conclusions then reached (*Betts* agt. *Betts*, 4 *Abbt. N. C.*, 317).*

It must, therefore, be held that the gift to the Catholic Publication Society is invalid.

* See note at end of this case.

The testator gave $5,000 dollars to his executors to be by them invested, and the same and its increase was to be appropriated and applied by them, towards founding an institution to be denominated and known as "The Little Sisters of the Poor," to aid and assist the destitute poor and needy in the city of New York, if such institution could be formed or put into operation by the encouraging co-operation with others, within five years after the testator's death, and if not, then said sum of $5,000 should form and be taken and paid as part of the residuary estate of the testator directed to be paid to his wife. Such institution has not been founded. This sum being given only on an uncertain condition, viz.: "the encouraging co-operation" of others towards the founding of an institution to assist destitute poor and needy persons, is void for uncertainty and indefiniteness and as depending upon a condition which may never happen (*Bascom* agt. *Allerton*, 34 *N. Y.* 584; *Dodge* agt. *Pond*, 23 *N. Y.*, 69).

These two sums of $2,500 and $5,000 not being legally disposed of, sink into, and become a part of, the residuary estate. The claim of priority in the payment of their legacies, interposed by the nephews and nieces of the testator, cannot be sustained.

By the terms of the will the several bequests of the testator are general. There being no evidence to be derived from the will of an intention on the part of the testator to give any priority to any one of the legatees named, their legacies will abate ratably in case of a deficiency of assets (*Wood* agt. *Vandenburgh*, 6 *Paige*, 277). The residuary estate by the will is given by the testator to his wife, but as she died in the lifetime of the testator, the next of kin of the testator, being his brother, and the four nephews and nieces named in the complaint, take all the estate not effectually disposed of by the will, and are adjudged to be entitled to the same.

As the funds representing this estate are now deposited, subject to the order of this court, it is proper that an accounting by the executor be here had, to the end that a judgment

Betts agt. Betts.

may be made for its distribution among those entitled thereto, according to their rights therein.

NOTE ON BETTS agt. BETTS (4 *Abb. N. C.*, 317), BY JUDGE VAN VORST. *Vide* McKEON agt. KEARNEY (*supra*), PAGE 349.

*Voluntary associations — legacies to.*

In the case of *Betts* agt. *Betts*, referred to in the foregoing opinion, the subject of bequests to voluntary, unincorporated societies, organized for charitable purposes, was examined by VAN VORST, J. The opinion, in so far as it relates to that subject, and which is not included in the report of the case (4 *Abbott N. C.*, 317, 403), is as follows:

"By the fifteenth clause of his will, the testator gave to the "American Home Missionary Society" $4,000, and also constituted it one of his residuary legatees and devisees, and, as such, if successful here, it will be entitled to receive one-sixth part of the residuary estate.

It is objected, on the part of the heirs at law of the testator, that this society was not incorporated at the death of the testator, and was not competent to take the gifts in its favor. Like objection is made to the validity of gifts made to several other unincorporated societies.

The point raised by this objection appears to have been definitely determined by the court of appeals. And it appears to be adjudged, by repeated decisions, that a voluntary unincorporated society, organized for charitable purposes, can take neither by devise or bequest (*Owens* agt. *The Missionary Society of the M. E. Church*, 14 *N. Y.*, 380; *Downing* agt. *Marshall* 23 *N. Y.*, 382; *Sherwood* agt. *Amer. Bible Society*, 1 *Keyes*, 561; *White* agt. *Howard*, 46 *N. Y.*, 144).

In the first of these cases, the question before the court was, whether a bequest to such an association was valid, and it was held to be void.

The learned judge, who delivered the opinion of the court, said: "Nothing is better settled than that a devise or bequest to an unincorporated association is, in general, void in equity, as it is in law." In *Downing* agt. *Marshall*, it is said: "That the residuary devise and bequest are void as to the unincorporated Home Missionary Society." In *Sherwood* agt *The American Bible Society*, it is said: "It cannot be pretended that the Arcot mission, a voluntary and fluctuating body of persons, unknown to the law, and irresponsible to the courts, was legally capable of taking the legacy under the will of the testatrix." And again: "It may be deemed settled in this state that a voluntary unincorporated association, has not legal capacity to receive a donation, even for a purpose deemed charitable."

And in *White* agt. *Howard*, it is said: "A voluntary association for charitable purposes cannot, under the laws of this state, take a legacy given to it."

In *Owens* agt. *Missionary Society*, and in *Sherwood* agt. *The Bible Society*, the gifts were to the societies directly. In *Downing* agt. *Marshall*, the devise and bequest was to the executors in trust, who were directed to distribute and appropriate the net annual income bequeathed, one-half, in equal shares, to the American Home Missionary, and other societies. The provisions in favor of the "unincorporated Home Missionary Society" were declared to be void.

It is true the opinion states "there is no trustee competent to take the fund so as to secure its appropriation to the benevolent purposes intended." But, according to the case, the benevolent purpose of the testator was the gift to this society, unaccompanied by any declaration or trust in regard to its ultimate disposition. There can be no question but that he intended, it, however, to be devoted to the benevolent and charitable purposes for which the society was organized and to be used "within the sphere of missionary labor carried on by the society." But such use was not expressly declared by the testator, but may be reasonably inferred from the gift itself.

In *White* agt. *Howard (supra)*, "The Southern Aid Society" was itself named as one of the residuary devisees and legatees.

In respect to this last case it may be observed that the interest devised and bequeathed was real property. But the opinion states in words, that this society could not take a "legacy," and if it could not "it is clear that it has no capacity to take by devise." In *Downing* agt. *Marshall* the income of certain manufacturing establishments, with the annual income of "all other real and *personal* estate, not otherwise disposed of" was the subject of the gift. In *Owens* agt. *Missionary Society* a portion of the proceeds of real and personal estate *directed to be sold*, was given, and in *Sherwood* agt. *American Bible Society* the bequest was money.

It is true, that in two of these cases, the gifts were made expressly to be used for the benevolent purposes of the society. But in the remaining two, *Owens* agt. *The Missionary Society* and *Downing* agt. *Marshall*, the gifts were absolute and unqualified, and no express limitation imposed, and none to be inferred, except such as might arise from the benevolent intentions of the testators, and the name and declared objects of the societies.

It is also true that a prominent ground of objection to the validity of the gifts assigned by the court, is that a voluntary association is not a good trustee to execute a charitable use ; but in all of these cases it is stated in terms, that a voluntary association is incapable of taking by bequest.

Such deliberate expression, so frequently made by our court of appeals I am bound to respect and by it I must be controlled.

These cases, it seems to me, are fatal to the provisions of the will under consideration, and to the validity of the bequest to the Home Missionary

and other unincorporated societies.   To have disposed of these bequests it might have been sufficient simply to have referred to these cases, but the claims of these societies have been urged upon the consideration of the court, with much earnestness, and it was argued that these cases are not truly decisive of the present bequests.   If there be a distinction, I think it should be urged upon the appellate court, by whom, in *Downing* agt. *Marshall*, it was solemnly adjudged that the " Home Missionary Society," whose claims are now urged, was then incapable of taking the gifts made to it, upon the ground of its want of corporate capacity.

The will of the testator under consideration in the case of *Downing* agt. *Marshall*, was dated in 1853, and the testator died in 1858.   The will of Ephraim Holbrook, now under consideration, was made in 1851, and the testator himself died in 1852.

There is but a few years intervening between the taking effect of the two wills, and the Home Missionary Society is a legatee under both wills. If, in the case first presented to the court, it was adjudged incapable of taking on a specified ground, and, if the ground of objection still exists, I do not well see how there could be any difference of decision.

It is now, however, further urged, in support of this gift, and to avoid the specific objection, that it has not corporate capacity to take; that the Home Missionary Society was, at the death of the testator, and so remained for many years thereafter, an association consisting of more than seven associates, having a president and treasurer, and was capable of suing and being sued in the name of either of said officers (*Chapter* 258 *of the Laws of New York, passed April* 7, 1849, *and chapter* 455 *of law passed July* 9, 1851), it being claimed that the effect of this legislation is to confer upon such associates certain attributes of corporations, and to obviate the objection that they cannot, as associations, be controlled by the judgment of the court.

Reference is also made by the counsel of this legatee to subsequent legislation, conferring upon these associations, further powers and privileges, which the more assimilate them to corporations.   But laws passed after the death of the testator can confer no right upon this society to the gifts in question, not possessed at the date of such event.

The four cases from the court of appeals, to which reference has been made above, are all subsequent to the acts of 1849 and 1851 and it cannot be that the effect of these laws, upon voluntary associations, was overlooked by the able counsel who participated in the argument of these cases, or the distinguished tribunal which decided them.

The act in question did not constitute such associations corporations. On the other hand, it was careful to provide that nothing contained in the act should be construed to confer any of the rights or privileges of corporations, except as therein specially provided (*Sec.* 5 *of act of* 1849)

Neither the Home Missionary Society, nor either of the other benevolent societies, provided for in the will under consideration, is a joint-stock company, having shareholders.

It does not appear that the interests of the members are represented by shares. They are voluntary associations for benevolent purposes, consisting each of more than seven associates.

. They are not organized in pursuance of any statute. They are not called upon to file any articles of association, specifying the purposes of their organization.

The constitution, or articles under which they are organized, is the result of a mutual agreement of the associates, and can be changed at will.

It was not the purpose of the testator to make a bequest for the personal advantage of the members of these associations, who in some instances number many hundreds, and are changing bodies. A subscription of a sum of money by any person, toward the good purposes of the Home Missionary Society, constituted him an annual member. Its funds are used exclusively for benevolent and charitable purposes.

The benevolent purpose which actuated the testator in making these gifts proceeded, as he expresses it, from his thankfulness to "the Great and Good Being" whom he served, for the prosperity with which he had been blessed, and which he acknowledged by a devotion of a portion of his estate "to purposes of permanent good."

This design of the testator could therefore be only effectuated by the application of his gift, not to the use of its members, but to the purposes for good which he desired to advance, and which it was the object of the society to accomplish.

As was said in *Owens* agt. *The Missionary Society* (*supra*): "To uphold this bequest, therefore, it is indispensable to maintain that the missionary society, if successful in obtaining the fund in question, would be bound to appropriate it to some pious or charitable use. If, then, a bequest, unaccompanied by any designation of the purposes to which it is to be applied, be made to a society whose name and public acts indicate that its objects are religious or charitable, is there an implied trust which limits the use to such objects? Where the bequest is to a *corporation*, there would seem to be some basis for such implication, because the objects, purposes and powers of the corporation, being in all cases more or less clearly defined by its charter, the bequest may fairly be presumed to have been intended for these specific objects.

But we have no such criterion for ascertaining the nature and purposes of a voluntary association. These purposes may change with the will of the associates. They may be pious to-day and impious to-morrow. There is no law to prevent or restrain such changes."

The learned judge then proceeds to discuss the question as to whether the bequest in the case could be held as a charity, and, for the purposes

Hume agt. The Mayor, &c.

of the inquiry, assumed "that, when a bequest is made to an unincorporated society, whose general objects are known to be, as its name indicates, religious or charitable, *a trust is implied,* that the funds shall be devoted to these objects.

And, as is stated above, the conclusion reached was that it was void.

But a further claim is made, on behalf of the Home Missionary Society, that, in the year 1871, it became incorporated.

The answer to this suggestion is, that the capacity of the society to take must be determined by its status at the time of the death of the testator (*White* agt. *Howard, supra*).

The result reached is, that the gifts to the unincorporated societies are void."